A93A1638. BELL v. CITY OF ALBANY.
A93A1639. DANIEL v. BELL.
(436 SE2d 87)

ANDREWS, Judge.

After Bell drove his car into a utility pole, he was arrested by City of Albany police and charged with driving under the influence of alcohol, driving on a suspended license, and no insurance. Evidence showed Bell was heavily intoxicated, exhibiting slurred and incoherent speech, and needing assistance to walk. Bell was handcuffed at the scene by Officer Daniel of the Albany police department, and taken to the police station for an intoximeter test, which he either refused or was unable to take. Bell was able to walk to the booking desk with support from Officer Daniel. After being either unwilling or unable to respond to the booking officer, Officer Daniel started to walk Bell over to the adjacent jail. Up to this point, Bell had not physically resisted the arrest. However, as Officer Daniel opened the door from the booking area, Bell suddenly refused to go through the doorway, and began to physically resist the officer's attempt to take him through the doorway. Officer Daniel grabbed Bell, and as the officer forcibly struggled to move Bell in front of him through the doorway the officer lost control of Bell as Bell fell forward through the doorway taking Officer Daniel down with him. Bell, who was still handcuffed at the time, struck his head on a car parked just outside

the doorway, and suffered a fractured skull. Although the booking officer called for another officer to help Officer Daniel when the struggle began, the fall occurred before the other officer could assist.

Alleging negligent and intentional torts under state law, Bell sued Officer Daniel individually for actions taken in his official capacity as an Albany police officer alleged to have caused the injury, and sued the City of Albany on the basis of respondeat superior. Alleging violation of federal rights, Bell's suit also stated a cause of action pursuant to 42 USC § 1983 seeking to impose personal liability on Officer Daniel for his actions, and liability on the City of Albany claiming the injury resulted from City policy or custom. The trial court entered an order granting the City of Albany's motion for summary judgment on the state and federal claims. In Case No. A93A1638, Bell appeals from a portion of this order, alleging that the trial court erred in concluding there was no evidence of a City policy or custom which caused the injury, and in granting summary judgment in favor of the City on his claims pursuant to 42 USC § 1983. In the same order, the trial court denied Officer Daniel's motion for summary judgment in which he sought a ruling that he was entitled, as a matter of law, to qualified immunity on the claims brought pursuant to 42 USC § 1983. In Case No. A93A1639, Daniel cross-appeals from the denial of his motion for summary judgment.

### Case No. A93A1638

Under 42 USC § 1983: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." The statute creates no substantive rights; rather it provides a remedy for federal rights found elsewhere, and supports a cause of action which may be brought in state as well as federal court. *Oklahoma City v. Tuttle*, 471 U. S. 808, 816 (105 SC 2427, 85 LE2d 791) (1985); *Davis v. City of Roswell*, 250 Ga. 8 (295 SE2d 317) (1982). Municipalities are persons under the statute held accountable if the deprivation of rights alleged was the result of a municipal policy or custom. *Monell v. Dept. of Social Services of New York City*, 436 U. S. 658 (98 SC 2018, 56 LE2d 611) (1978); *Armour v. Davidson*, 203 Ga. App. 12 (416 SE2d 92) (1992).

Bell argues that the City of Albany had a policy authorizing the use of excessive force against Bell, and an informal policy or custom of permitting a single police officer to handle and escort highly intoxi-

cated and handcuffed arrestees despite a high risk of injury to the arrestee. Although not clearly stated, the latter allegation appears to include a claim that the injury resulted from a policy of inadequate police training with respect to handling intoxicated arrestees. The only evidence adduced by Bell in support of these contentions was the single incident in which Bell was injured while struggling with Officer Daniel, a non-policymaking employee of the City. In some instances a single decision by municipal policymakers, or a single implementation of a municipal policy or custom by a municipal employee, may be sufficient to establish that a municipal policy or custom caused the alleged deprivation, but municipal liability may not be imposed pursuant to 42 USC § 1983 for a single incident of unconstitutional conduct by a municipal employee without proof that the conduct was taken pursuant to a municipal policy or custom. *Pembaur v. Cincinnati*, 475 U. S. 469, 478-482 (106 SC 1292, 89 LE2d 452) (1986).

There was no evidence of any official City policy or custom of using excessive force against arrestees, nor was there any evidence that the City endorsed a policy or custom of handling intoxicated arrestees in a manner which resulted in injury. There was no evidence of other incidences of such conduct suggesting any widespread informal policy or practice constituting a custom or usage with the force of law. *City of St. Louis v. Praprotnik*, 485 U. S. 112, 127 (108 SC 915, 99 LE2d 107) (1988); *Armour*, supra at 13. Neither was there evidence sufficient to create any factual issue in support of any claim of inadequate training. "[I]f a city employee violates another's constitutional rights, the city may be liable if it had a policy or custom of failing to train its employees and that failure to train caused the constitutional violation. . . . [I]nadequate training of police officers [can] be characterized as the cause of the constitutional tort if — and only if — the failure to train amounted to 'deliberate indifference' to the rights of persons with whom the police come into contact." *Collins v. Harker Heights*, 503 U. S. ____ (112 SC 1061, 117 LE2d 261, 272) (1992) (construing *Canton v. Harris*, 489 U. S. 378 (109 SC 1197, 103 LE2d 412) (1989)). The evidence showed that City police officers received appropriate training in dealing with intoxicated arrestees. Even assuming that there was evidence to support a factual issue as to whether the training was completely adequate, there was certainly no evidence of a failure to train amounting to deliberate indifference.[1]

---

[1] Although not raised by the parties, prior to analyzing whether the City is liable for injury to Bell resulting from a policy or custom, the initial question is whether the evidence shows that the injury to Bell was caused by a deprivation of any federal rights. *Collins*, supra, 117 LE2d at 270. Under the present facts, even if there had been evidence of the City policies or customs alleged by Bell, if Officer Daniel did not violate Bell's constitutional

The trial court properly granted summary judgment in favor of the City of Albany.

## Case No. A93A1639

Government officials performing discretionary functions[2] are granted a qualified immunity shielding them from imposition of personal liability pursuant to 42 USC § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U. S. 800 (102 SC 2727, 73 LE2d 396) (1982); *Forney v. Purvis*, 190 Ga. App. 192, 195-196 (378 SE2d 470) (1989). Thus, the test is applied by considering the objective reasonableness of the official's actions (irrespective of his subjective beliefs) in light of legal rules which were clearly established at the time the action was taken. *Harlow*, supra, 457 U. S. at 818-819. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent." (Citations and punctuation omitted.) *Anderson v. Creighton*, 483 U. S. 635, 640 (107 SC 3034, 97 LE2d 523) (1987).

Although Bell's 42 USC § 1983 action does not clearly state the substantive right he claims was violated, his injury was suffered when Officer Daniel used physical force in the course of procedures effecting Bell's arrest, prior to actual detention on the charges, and the claim is properly analyzed as an excessive force claim under the objective reasonableness standard applicable to the Fourth Amendment's prohibition against unreasonable seizures of the person. *Graham v. Connor*, 490 U. S. 386 (109 SC 1865, 104 LE2d 443) (1989).[3] "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental inter-

---

rights (see Case No. A93A1639, infra), there would be no basis for City liability under 42 USC § 1983. See *Williams v. Richmond County*, 804 FSupp. 1561, 1568-1570 (S.D. Ga. 1992) (court granted summary judgment in favor of defendants on 42 USC § 1983 claim on basis that use of force did not violate plaintiff's Fourth Amendment rights, thus there was no need to reach issues of governmental policy or custom).

[2] It is undisputed that Officer Daniel was in the exercise of a discretionary function when he took the actions at issue in this appeal.

[3] Bell's claim in a separate count of his complaint that his Eighth Amendment right to be free from cruel and unusual punishment was violated has no merit since this right would apply to punishment inflicted on a convicted inmate. See *Long v. Jones*, 208 Ga. App. 798 (432 SE2d 593) (1993).

ests at stake. Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation.

As in other Fourth Amendment contexts, however, the reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." (Citations and punctuation omitted.) Id. 490 U. S. at 396-397.

Having stated the legal rules applicable to the use of physical force during the arrest, in deciding whether qualified immunity will be granted we must consider whether the force used by Officer Daniel, under the circumstances presented, was such that it would have been clear to a reasonable police officer that using such force would violate Bell's rights under the Fourth Amendment not to be subjected to an unreasonable use of force during his arrest. In other words, even if we concluded, with the benefit of hindsight, that Officer Daniel violated Bell's constitutional rights, if a reasonable officer under the same circumstances would have acted similarly, then Officer Daniel is entitled to the shield of qualified immunity. Under this standard, we conclude that it would not have been clearly evident to a reasonable police officer that Officer Daniel's use of force was excessive or unreasonable. Although the injuries suffered by Bell were serious and unfortunate, the force which Bell contends caused them did not exceed the means a reasonable police officer would have employed under similar circumstances in response to Bell's resistance to arrest. Moreover, we find no

evidence that Officer Daniel should have reasonably anticipated that, by himself, he would be unable to adequately control Bell during the arrest. "[I]n such cases those [officers] — like other officials who act in ways they reasonably believe to be lawful — should not be held personally liable." *Anderson*, supra, 483 U. S. at 641. We find, as a matter of law,[4] that Officer Daniel's actions were an objectively reasonable use of force under the circumstances, and that he is entitled to the protection of qualified immunity.[5]

The trial court erred by denying Officer Daniel's motion for summary judgment on the issue of qualified immunity from Bell's claims under 42 USC § 1983.

*Judgment affirmed in Case No. A93A1638, and reversed in Case No. A93A1639. Pope, C. J., and Birdsong, P. J., concur.*

DECIDED SEPTEMBER 23, 1993.

*Short, Fowler & Castellow, James M. Bivins*, for Bell.
*Black & Black, Eugene C. Black, Jr., Al Grieshaber, Jr.*, for City of Albany and Daniel.

---

[4] Qualified immunity is a question of law for the court. *Stone v. Peacock*, 968 F2d 1163, 1165-1166 (11th Cir. 1992).

[5] The facts of this case support not only an award of qualified immunity to Officer Daniel, but would also support the conclusion that there was no unreasonable use of force sufficient to support a claim that Bell's Fourth Amendment rights were violated. This is not to say that an award of qualified immunity to a defendant in other cases would be equivalent to concluding that the defendant's conduct demonstrated no constitutional violation.