A08A0882. WHITTEN v. WOOTEN et al.

(671 SE2d 317)

ANDREWS, Judge.

Diana L. Whitten brought an action pursuant to 42 USC § 1983 alleging that Sergeant John C. Wooten, Jr., and Sergeant Ulises Nieves violated her constitutional rights and caused serious injury to her leg by using excessive force against her while she was a pre-trial detainee at the Glynn County Detention Center. Whitten appeals from the trial court's grant of summary judgment in favor of Wooten

and Nieves.[1] Because the trial court correctly found that qualified immunity protected Wooten and Nieves from these claims, we affirm.

Whitten was arrested for a probation violation and placed in a cell at the Detention Center. While alone in the eight by twelve-foot cell, Whitten threw her food on the cell floor, banged repeatedly on the cell window, screamed, cursed, removed all of her clothes, and smeared the cell window with food, toilet paper, and a bloody tampon. To stop Whitten's disruptive behavior, the Detention Center physician ordered the nurse at the Detention Center to give her an injection of medication. Wooten and Nieves worked at the Detention Center as detention officers for the Glynn County Sheriff's Department. Wooten and Nieves entered the cell first, and each took hold of Whitten by an arm as they attempted to verbally calm her down so the nurse could administer the injection. Whitten violently resisted these efforts by pushing and struggling to get free while continuing to scream and curse. In the struggle, Wooten, Nieves, and Whitten started to slip around in the food that Whitten had thrown on the floor. As Wooten struggled to keep his footing, Whitten spit in his face and started flailing about with her arms. When Wooten took a step back and started to slip, Nieves decided to physically force Whitten onto a nearby mattress. Nieves said he feared that, unless he forced Whitten down to the mattress to end her aggressive struggle, someone was going to slip and fall onto the hard concrete floor. At that point, Nieves extended one leg in front of Whitten, placed his hand on Whitten's shoulder, and turned Whitten over his extended leg and down onto the mattress. The nurse then administered the injection. After the nurse administered the injection, another detention officer noticed that one of Whitten's legs appeared to be bowed or twisted backward at the knee. Although Whitten was repeating, "I'm okay, I'm okay," the physician examined Whitten's knee and sent her to the hospital. Whitten does not dispute these facts. She could recall nothing that occurred in the cell, and does not remember being taken to the hospital. Whitten recalled only that her injured knee was treated at the hospital, and that at some point thereafter her leg was amputated.

Whitten filed an action pursuant to 42 USC § 1983 against Wooten and Nieves individually alleging that, acting under color of state law as detention officers, they violated her rights under the Fourth and Fourteenth Amendments by using excessive force, which caused the leg injury and eventual amputation. On the present facts,

---

[1] Whitten did not contest the trial court's grant of summary judgment in favor of the remaining defendants: Sheriff Wayne Bennett; the Glynn County Sheriff's Department; the Glynn County Detention Center; and Master Sergeant Sheila Moran.

the trial court correctly granted summary judgment in favor of Wooten and Nieves on the basis of qualified immunity.

Qualified immunity gives government officials performing discretionary functions complete protection from individual claims brought pursuant to 42 USC § 1983, if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U. S. 800, 818 (102 SC 2727, 73 LE2d 396) (1982). Whether qualified immunity protects an official from suit is a question of law. *Bell v. City of Albany*, 210 Ga. App. 371, 376, n. 4 (436 SE2d 87) (1993). We review the trial court's ruling on summary judgment de novo, viewing the facts in the light most favorable to the nonmoving party. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Whitten does not dispute that Wooten and Nieves were performing a discretionary function when they used force against her in the cell. She claims the force was excessive and violated clearly established constitutional rights under the Fourth and Fourteenth Amendments.

A claim based on the Fourth Amendment prohibition against unreasonable seizure of the person applies where alleged excessive force was used to seize a person during the process of arrest, prior to actual detention on the charges. *Bell*, 210 Ga. App. at 374. In a Fourth Amendment claim, an arresting officer is entitled to qualified immunity if the officer's actions were objectively reasonable — in other words, if a reasonable officer under the same circumstances would have believed the force used was not excessive. Id. at 374-375. The Fourth Amendment does not apply in the present case because the record shows that Whitten had already been arrested and placed in a detention cell when the alleged excessive force was used by detention officers in the cell.

A claim that excessive force was used against a person being held after arrest in pre-trial detention is governed by the substantive component of the Due Process Clause of the Fourteenth Amendment. *Bozeman v. Orum*, 422 F3d 1265, 1271 (11th Cir. 2005); *Cockrell v. Sparks*, 510 F3d 1307, 1311 (11th Cir. 2007). The Fourteenth Amendment governs Whitten's claim that excessive force was used against her in the detention cell. In excessive force claims pursuant to the Fourteenth Amendment, the same standard is applied to pre-trial detainees that is applied under the Eighth Amendment Cruel and Unusual Punishment Clause to convicted prisoners. *Danley v. Allen*, 540 F3d 1298, 1306 (11th Cir. 2008); *Bozeman*, supra; *Cockrell*, supra. Under this standard, whether or not a prison guard or detention officer's use of force is entitled to qualified immunity "turns on whether that force was applied in a good faith effort to maintain or restore discipline or maliciously or

sadistically for the very purpose of causing harm." (Citations and punctuation omitted.) *Bozeman*, 422 F3d at 1271. The use of force in this context "will only violate substantive due process rights under the Fourteenth Amendment when it is so egregious that it shocks the conscience." *Cockrell*, 510 F3d at 1311. If force is used "maliciously [or] sadistically for the very purpose of causing harm," then it necessarily shocks the conscience, and there is no qualified immunity. (Citations and punctuation omitted.) *Danley*, 540 F3d at 1307.

> To evaluate whether actions shock the conscience, we consider the following factors: (1) the need for force; (2) the relationship between that need and the amount of force used; and (3) the extent of the resulting injury. In addition to those three factors we consider as fourth and fifth factors, the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to them, and any efforts made to temper the severity of a forceful response. When we consider whether the jailers' use of force was excessive, we must give a wide range of deference to prison officials acting to preserve discipline and security.

(Citations and punctuation omitted.) Id.

Applying this standard, Wooten and Nieves were entitled to summary judgment on the basis of qualified immunity. Whitten was creating a disturbance at the Detention Center so disruptive that the physician ordered the nurse to give her an injection of medication to calm her behavior. Wooten and Nieves entered the cell for the purpose of calming or restraining Whitten so the nurse could administer the injection. They first attempted to calm Whitten by verbal persuasion, but that failed. They attempted to simply hold her still by her arms, but that failed as Whitten continued to violently resist. When it appeared that they were all in danger of slipping on the food Whitten had thrown on the floor and falling dangerously onto the concrete floor, Nieves took Whitten down to a mattress by taking hold of her shoulder and pulling her off balance over his extended leg. There is evidence that this maneuver had the unfortunate effect of inflicting a severe injury to Whitten's knee. Nevertheless, the force used was not disproportionate to the need, nor was the severe injury inflicted foreseeable. Wooten and Nieves were justified in using this force to put Whitten in a position to receive the injection. There being no evidence that Wooten or Nieves used force "maliciously or sadistically for the very purpose of causing harm," it follows that the force was not "so egregious that it shocks the conscience." Rather, Wooten and Nieves used force in a good faith

effort to maintain or restore discipline and security, and the wide range of deference given to detention officials so acting entitled them to qualified immunity. *Bozeman*, 422 F3d at 1271; *Danley*, 540 F3d at 1307.[2]

Although the trial court did not consider all the elements of the applicable standard in granting summary judgment to Wooten and Nieves, the court's judgment is affirmed under the right for any reason rule. *City of Gainesville v. Dodd*, 275 Ga. 834 (573 SE2d 369) (2002).

*Judgment affirmed. Johnson, P. J., Blackburn, P. J., and Bernes, J., concur. Barnes, C. J., concurs in the judgment only. Ruffin, P. J., and Phipps, J., dissent.*

RUFFIN, Presiding Judge, dissenting.

The majority analyzes Whitten's claims under the Fourteenth Amendment. But because Whitten was not a pretrial detainee at the time of the incident resulting in the injuries to her leg, her excessive force claims should have been analyzed under the standard applicable to the Fourth Amendment. Under either standard, however, the trial court erred in granting summary judgment to the defendants. Therefore, I am compelled to dissent.

Viewed in a light favorable to the nonmoving party,[3] the record reveals that Whitten — who was homeless at the time — was sitting on a log at a gas station adjacent to the Glynn County Detention Center when she was arrested.[4] The police transported her to the detention center, where she was placed in a cell in the booking area. Whitten then removed her clothing, began banging on the glass window of her cell, screamed, cursed, and threw food on the floor of the eight by twelve-foot cell. She also plastered toilet paper and a soiled tampon on the window.

Thereafter, a jail physician directed that Whitten receive a medical injection.[5] Sergeant Wooten and Sergeant Nieves entered Whitten's cell in an attempt to "calm her down" so that the nurse could administer the injection, and the door closed and locked behind

---

[2] Even analyzing Whitten's claim under the Fourth Amendment "objective reasonableness" standard, Wooten and Nieves would have been entitled to qualified immunity as a matter of law because a reasonable officer acting under the same circumstances would have believed that the force used to restrain Whitten was not excessive. See *Bell*, 210 Ga. App. at 374-375.

[3] See *Matlack v. Cobb Elec. Membership Corp.*, 289 Ga. App. 632, 632-633 (658 SE2d 137) (2008).

[4] The majority asserts that Whitten was arrested for a probation violation. However, the record is silent regarding the basis for arrest; the probation violation reference is contained in one of the party's appellate briefs. However, "[s]tatements in briefs are not evidence." *Palmer & Cay of Ga. v. Lockton Cos.*, 284 Ga. App. 196, 198, n. 1 (643 SE2d 746) (2007).

[5] The record does not indicate the type of medication the injection contained.

them. Wooten grabbed Whitten's right arm and instructed her to "calm down, please calm down," and Nieves grabbed her left arm and wrist. Whitten, who was screaming and cursing, began struggling and flailing her arms, and she spat in Wooten's face.

Immediately thereafter, in an effort to "control" Whitten and to prevent all three from falling onto the concrete floor, Nieves decided to execute a "takedown" maneuver on Whitten to get her onto the mattress that was on the floor of the cell. He grabbed Whitten by her upper body, extended his leg in front of her left leg, and "took her down." According to Nieves, he went down on his knees, and all three of them landed on the mattress. At his deposition, Nieves stated that although he had received training in multiple methods for restraining a subject, none of them involved a leg-sweep maneuver or any other technique involving his legs.

Master Sergeant Moran had the door unlocked, and she and the nurse then entered the cell. Whitten, Nieves, and Wooten were all on the floor, and Whitten was repeating, "I'm okay, I'm okay."[6] After the nurse administered two injections, Moran noticed that one of Whitten's legs appeared to be "bowed at the knee area." According to Wooten, Whitten's left leg was "twisted kind of backwards at the knee." The jail physician was summoned to examine her leg, and he concluded that Whitten needed to go to the hospital. Whitten was given a leg brace, wheeled to a police car in a wheelchair, and transported to the hospital.

At a subsequent deposition, Whitten recalled her arrest and remembered throwing her food onto the cell floor, yelling, stripping naked, and banging on the glass of her cell door. She could not recall anything that happened after the officers entered her cell, however. According to Whitten, her leg was broken in the incident and, as a result, had to be amputated. Based on these allegations, Whitten filed suit against Nieves and Wooten pursuant to 42 USC § 1983, asserting that their excessive use of force violated her rights under both the Fourth and Fourteenth Amendments. The defendants filed a motion for summary judgment, which the trial court granted, concluding that Nieves and Wooten were entitled to qualified immunity.

A government official — including a police officer — performing a discretionary function[7] is entitled to qualified immunity shielding him from personal liability from a claim asserted under 42 USC

---

[6] It is unclear whether such utterance meant that Whitten was now calm or that she was uninjured.

[7] Whitten argued before the trial court that Nieves and Wooten were performing a ministerial act when they entered her cell. She has apparently abandoned this argument on appeal, however.

§ 1983 " 'insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' "[8] In considering Whitten's appeal, the majority applies the standard employed for a post-arrest, pretrial detainee as set forth in the substantive component of the Due Process Clause of the Fourteenth Amendment.[9] However, because the arrest *process* had not yet been completed at the time of the incident, the trial court should have analyzed Whitten's claims under the standard applicable to Fourth Amendment excessive force claims.[10]

"The precise point at which a seizure ends (for purposes of Fourth Amendment [analysis]) and at which pretrial detention begins (governed until a conviction by the Fourteenth Amendment) is not settled in [the Eleventh] Circuit."[11] In the instant case, Whitten had been arrested and delivered to the detention center approximately three hours before the incident at issue. Significantly, the booking *process* had not yet been completed. Under these facts, Whitten was not yet a pretrial detainee, and her claims should be analyzed under the Fourth Amendment.[12]

Thus, the proper standard is whether the officer's conduct was

---

[8] *Bell v. City of Albany*, 210 Ga. App. 371, 374 (436 SE2d 87) (1993), quoting *Harlow v. Fitzgerald*, 457 U. S. 800, 818 (IV) (B) (102 SC 2727, 73 LE2d 396) (1982).

[9] Under the Fourteenth Amendment, "whether or not a prison guard's application of force is actionable turns on whether that force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm." (Punctuation omitted.) *Bozeman v. Orum*, 422 F3d 1265, 1271 (I) (A) (11th Cir. 2005).

[10] Under the Fourth Amendment, "[which] encompasses the plain right to be free from the use of excessive force in the course of an arrest[, . . . t]he question is whether the officer's conduct is objectively reasonable in light of the facts confronting the officer." (Citations and punctuation omitted.) *Vinyard v. Wilson*, 311 F3d 1340, 1347 (III) (B) (11th Cir. 2002).

[11] *Hicks v. Moore*, 422 F3d 1246, 1253 (I) (B), n. 7 (11th Cir. 2005).

[12] See *Bell*, supra (applying Fourth Amendment analysis where the plaintiff was injured when an officer pushed him through a doorway before the booking process had been completed); *Hicks*, supra (analyzing excessive force claim under the Fourth Amendment where the plaintiff "had already been arrested, delivered to the [j]ail, and had begun – but not completed – the booking process[,]" and the arresting officer "was not present during and did not participate in the events underlying the complaint"). See also *Stephens v. City of Butler*, 509 FSupp.2d 1098, 1110 (III) (C) (S.D. Ala. 2007) (applying Fourth Amendment standard to excessive force claim where the plaintiff was injured when an officer used a taser on him during the booking process); *Calhoun v. Thomas*, 360 FSupp.2d 1264, 1274 (III) (A) (i) (M.D. Ala. 2005) (Fourth Amendment analysis is appropriate standard for excessive force case based on injuries the plaintiff received during interrogation at the sheriff's department); *Burkett v. Alachua County*, 250 Fed. Appx. 950, 952, n. 5 (11th Cir. 2007) (unpublished opinion applying Fourth Amendment analysis, at the urging of both parties, to plaintiff's claim of excessive force based on injuries he received in a holding cell at the county jail before his first appearance). Compare *Bozeman*, supra (applying Fourteenth Amendment analysis to excessive force claim asserted after the plaintiff died following injuries he received at a detention facility where he had been held as a pretrial detainee for more than a month); *Cockrell v. Sparks*, 510 F3d 1307, 1311 (III) (11th Cir. 2007) (applying Fourteenth Amendment, without analysis, to plaintiff's excessive force claim based on injuries he received while being held in the county jail's "drunk tank").

"objectively reasonable" in light of the totality of the circumstances, judging it from "the perspective of a reasonable officer on the scene, rather than through the lens of hindsight, taking into account all of the attendant circumstances."[13] Whether the force used was reasonable turns on several factors, including "(1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted."[14] Other factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[15] These are factors that are appropriate for a jury to consider, rather than to be summarily determined by this Court on a motion for summary judgment.

Because the "takedown" occurred immediately after Whitten spat in Wooten's face, a jury could find that the "takedown" was retaliatory, an unlawful use of force, and excessive, in violation of Whitten's constitutional rights.[16] The record is silent as to the basis for Whitten's arrest, and thus, there was no evidence that she was suspected of having committed a serious crime. Although Whitten was naked, screaming, and agitated, there was no evidence that she was physically assaulting the officers. Immediately after she spat in Wooten's face,[17] Nieves made the decision to administer a leg-sweep takedown maneuver, despite the fact that he had not been trained to use such a technique. And a reasonable jury could conclude that these actions resulted in serious injury to Whitten's leg. Under these circumstances, the trial court erred in granting summary judgment to Nieves and Wooten based on qualified immunity.[18]

Similarly, a jury could conclude that Nieves and Wooten used force "maliciously [or] sadistically for the very purpose of causing

---

[13] *Kesinger v. Herrington*, 381 F3d 1243, 1249 (IV) (B) (11th Cir. 2004), citing *Graham v. Connor*, 490 U. S. 386, 396 (109 SC 1865, 104 LE2d 443) (1989). See *Draper v. Reynolds*, 369 F3d 1270, 1277 (11th Cir. 2004).

[14] (Punctuation and footnote omitted.) *Draper,* supra at 1277-1278 (III) (D).

[15] (Punctuation omitted.) *Thornton v. City of Macon*, 132 F3d 1395, 1400 (III) (11th Cir. 1998), quoting *Graham*, supra at 396.

[16] See *Davis v. Williams*, 451 F3d 759, 767 (III) (B) (11th Cir. 2006).

[17] At his deposition, Nieves was asked, "So you decided to take her down right at the time she spit in Sergeant Wooten's face?", and Nieves responded, "Yes, sir."

[18] See *Davis*, supra at 767-768 (summary judgment on the basis of qualified immunity not proper where officers intentionally grabbed and pulled at the handcuffed plaintiff's shoulder, after the plaintiff advised that he had a sore shoulder, and forced him to the ground by applying pressure to the shoulder, resulting in a torn rotator cuff, numbness to his thumb, and a sore neck). See also *Thornton*, supra; *Salter v. McNesby*, 2007 U. S. Dist. LEXIS 62712 (N.D. Fla. 2007). Compare *Bell*, supra at 374-376 (trial court erred by denying officer's motion for summary judgment on the issue of qualified immunity where officer grabbed the intoxicated and handcuffed plaintiff and attempted to move him through a doorway and the plaintiff then fell and struck his head on a car, fracturing his skull).

harm."[19] Therefore, even analyzing Whitten's claim under the Fourteenth Amendment standard, the trial court erred in granting the defendants' motion for summary judgment.

The majority, by its heavy-handed actions today, has invaded the circle of the unconcerned and has entered what Thomas Carlyle refers to as the "Centre of Indifference."[20] The summary disposition by the majority makes it a sad time for Georgians who are in the custody of police officers — placing life, limb, and liberty of an arrestee in the very hands of those whose sworn duty is to protect all citizens.

I am authorized to state that Judge Phipps joins in this dissent.

DECIDED DECEMBER 1, 2008 —
RECONSIDERATION DENIED DECEMBER 16, 2008 — 

*Clark & Clark, Fred S. Clark,* for appellant.
*Brown, Readdick, Bumgartner, Carter, Strickland & Watkins, Terry L. Readdick, Steven G. Blackerby,* for appellees.

---

[19] (Punctuation omitted.) *Cockrell,* supra.

[20] Thomas Carlyle, Sartor Resartus, 112-121 (Charles F. Harrold ed.).