BARKETT, Circuit Judge,
dissenting:
I believe that the district court was eminently correct in finding that the totality of the meager facts presented in this case do not total reasonable suspicion, and the district court’s conclusions are entitled to our deference.
The Fourth Amendment was designed to protect the rights of people against unreasonable searches and seizures. As our jurisprudence has evolved, so have our standards .for judging what constitutes reasonable grounds for stopping our citizens. Such changes, however, have not eviscerated the protections of the Fourth Amendment entirely, and law enforcement officers are still required to justify their stops and searches with a reasonable, articulable suspicion based on objective facts that criminal activity either has occurred, or is likely to occur. Suspicion that is not reasonable or cannot be supported by an articulation that logically connects action to criminal activity, is simply a hunch and *1275 does not permit a seizure. “The reasonable suspicion must be more than an inchoate and unparticularized suspicion or hunch.” United States v. Powell, 222 F.3d 913, 917 (11th Cir.2000) (quotation marks and citation omitted).
The testimony of the agent in this case, Agent Cole, may support a hunch, but no facts were articulated that turned that hunch into a reasonable conclusion that the activity was related to a criminal act.[1] The Fourth Amendment is supposed to protect citizens in a free society from being seized by the government at random when their behavior appears completely law-abiding. Indeed, the Supreme Court has said that “the Fourth Amendment forbids stopping vehicles at random to inquire if they are carrying aliens who are illegally in the country, [and] it also forbids stopping or detaining persons for questioning about their citizenship on less than a reasonable suspicion that they may be aliens.” United States v. Brignoni-Ponce, 422 U.S. 873, 884, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) (emphasis added).
In this case the majority sees the testimony presented differently than I do, and more importantly, than the district court did. Although in noting the standard of review the majority appropriately recites our responsibility to view the facts in the light most favorable to Bautista-Silva, it remarkably does not do so. Rather, it presents the facts in the light most favorable to the government, cobbling together select portions of the testimony to support its own conclusion.
Agent Cole testified on direct examination to the following: He was monitoring southbound traffic on Interstate 95 (“I-95”) from a highway rest area near Orlando, Florida, when he saw a Suburban pass. From the rest area, he watched [the Suburban] pass [his] • location. He testified that “As it was passing where I was sitting, it was in the outside lane, closer to the median — there’s two lanes — and in front of it or in between me, myself, and that vehicle was a pickup truck pulling a flat trailer with some objects in it. And I saw the vehicle go by and I noticed that there were six occupants in the car in the vehicle; and after they passed my location ... I saw that it had a license plate from California.” In addition, Agent Cole said he noticed that the car contained all male subjects and that he “knew [the two people in the front seats] were Hispanic males.” At this point he told his partner “there was a smuggling load” and he left the rest area to catch the Suburban.
Agent Cole admitted that he did not know how fast the Suburban was going when it originally passed the rest area from which he was observing traffic. Nor did he suggest that the Suburban' being driven erratically, but rather simply appeared to be driving along with traffic. Nonetheless, he acknowledged on cross examination that “[b]ased solely on the fact that it was a California license plate, a Chevy suburban with at least two, if not six, Hispanic males in it,” he had already determined that this “was an alien smuggling case.”
Moreover, even when accounting for the events that occurred prior to Agent Cole’s stop of the vehicle, I still find an insufficient , basis for reasonable suspicion. Agent Cole testified that he did not “immediately pull out [of his position in the rest area] because there’s a ravine there and I did not want to get stuck in the mud. So I had to actually go behind and go down parallel to him as I drove out the rest area onto the highway.” When Agent *1276 Cole sped up to approximately ninety miles an hour to catch the Suburban, it “slowed down very quickly.” Agent Cole testified that he lowered his window and waved from the driver’s seat to get the attention of the occupants, to which they apparently failed to respond. He then stopped the Suburban.
These few facts, considered in their totality, fall short of supporting the conclusion that “reasonable suspicion objectively existed to justify” Agent Cole’s decision to conduct a stop. Hicks v. Moore, 422 F.3d 1246, 1252 (11th Cir.2005) (citing Evans v. Stephens, 407 F.3d 1272, 1280 n. 9 (11th Cir.2005) (en banc)). As the district court correctly concluded “almost all of the facts relied upon by the Border Patrol agents in initiating this stop — such as the size of the vehicle, and out-of-state license plates, the location, etc. — were entirely (or almost entirely) neutral, and even when added together did not tend to suggest that the Suburban was engaged in illegal activity.” Also noted by the district court, “most [of the factors relied upon by Agent Cole] are too commonplace to support such a suspicion or to be given meaningful weight in a ‘totality of the circumstances’ analysis.”
The majority disagrees but misapplies the law in doing so. For example, in attempting to discount the district court’s conclusion and to justify its own, the majority improperly construes against Bautista-Silva, Agent Cole’s testimony regarding the circumstances regarding the Suburban and pickup truck’s passing of the rest area. Agent Cole stated that the Suburban might have been at most “drifting” behind the pickup truck, and that he was uncertain if it was attempting to avoid his detection. However, rather than construe this testimony in favor of BautistaSilva, the majority finds that the Suburban’s movement by the pickup truck was “suspicious,” — a finding unsupported by the record evidence.
The truck that the Suburban was supposedly using to cloak itself was merely a pickup truck pulling a flat trailer, not an eighteen-wheeler or other oversize vehicle that would have hidden the Suburban from view. The Suburban and the pickup truck could only have been viewed by the border patrol agents for a few seconds as they passed the rest area. There was no indication that the drivers or passengers in either vehicle saw the border patrol agents. Nor did Agent Cole offer any facts whatsoever describing any maneuvers to “hide” or otherwise to support his bare conclusions that Bautista-Silva might have been trying to evade detection. Most tellingly, Agent Cole never mentioned in his police report filed at the time of this incident that the Suburban made any attempt to hide behind the pickup truck as it passed the rest area. Viewing these facts in the light most favorable to BautistaSilva simply does not support the conclusion that'the Suburban was doing anything other than traveling along the highway.
Given these unremarkable facts, I find no basis to disturb the district court’s findings that: (1) the fact that the Suburban was traveling south on 1-95 was unremarkable because millions of vehicles use the 1-95 corridor, and there was no evidence that smugglers used 1-95 disproportionately or that it was a “hot spot” for smuggling; (2) the fact that the Suburban had a California license plate was unremarkable because hundreds of thousands of visitors come to Florida from California every year; (3) the fact that the vehicle was a Suburban was unremarkable because border patrol agents are not unanimous in their belief that SUVs are the vehicles of choice among smugglers and there are an overwhelming number of law abiding citizens traveling on 1-95 in SUVs; (4) the Suburban’s speeding up and slowing down was unremarkable because “this was not sufficiently different from the way *1277 others routinely drive on Interstate 95 to warrant suspicion,” especially given that the Suburban never attempted to escape by exiting the highway; and (5) under prior Fifth Circuit precedent, the fact that the defendants stared straight ahead and did not acknowledge Agent Cole’s marked car could not be assigned any weight in assessing the constitutionality of a stop, especially as there was no evidence that Bautista-Silva even saw Agent Cole’s border patrol car.[2]
Moreover, under our precedent, the district court’s conclusions are further supported by the lack of facts underlying Agent Cole’s asserted expertise. As an en banc court, in United States v. Frazier, 387 F.3d 1244 (11th Cir.2004), we said: “[sjince [the expert] was relying solely or primarily on his experience, it remained [his] burden ... to explain how that experience led to the conclusion he reached, why that experience was a sufficient basis for the opinion, and just how that experience %vas reliably applied to the facts of the case.” Id. at 1265 (emphasis added). Agent Cole’s suppression hearing testimony, in contrast, was highly generalized and failed to sufficiently tether his experience to the relevant facts. For example, although he claimed to have stopped many vehicles on 1-95, there was no evidence of how many, if any, of those stops turned out to involve illegal aliens.
The district court further acknowledged Florida’s lack of proximity to the Mexican border, which weighs against the government, and the record was devoid of evidence that the Suburban was overloaded or that the passengers attempted to conceal themselves. It is also worth noting that the presence of Hispanics -in Florida can hardly be deemed uncommon, or indicative of anything suspicious or illegal. Finally, the district court noted that Agent Cole and his partner, Agent Perez, failed to check the Treasury Enforcement Communications System to see if the Suburban was associated with human smuggling.
Our deference is to the district court’s factual findings. The majority is correct that the threshold for reasonable suspicion justifying an investigatory stop is lower than the threshold for probable cause justifying an arrest. However, to permit the stop under these facts is to permit mere hunches to legitimize stops, not reasonable suspicion. The district court correctly determined that the circumstances that led Agent Cole to conclude at the rest stop that there was reasonable suspicion that the Suburban contained illegal aliens could not objectively support a “particularized and objective basis” for suspecting any illegal activity. All that Agent Cole knew when he decided that this “was an alien smuggling case” and proceeded to stop the vehicle, was that a Suburban with California license plates and possibly all male *1278 passengers, including two Hispanics, was traveling on 1-95 through Florida, alongside a pickup truck as it passed the rest area — all sufficiently unremarkable events even when considered in conjunction with each other. These factors, even when viewed together, support nothing more than impermissible racial profiling that should never be used under our Constitution as an excuse for randomly stopping any of the many Hispanic motorists that travel the highways of Florida in SUV’s. I respectfully dissent.

. The majority opinion states that the district court "credited” Agent Cole's testimony. The district court did not say that, and I believe, if anything, the skepticism expressed in the district court’s order over the lack of a reasonable suspicion suggests the opposite.

. Unlike the majority, I do not find that the district court's reliance on prior Fifth Circuit precedent, United States v. Escamilla, 560 F.2d 1229, 1233 (5th Cir.1977), is without merit despite the Supreme Court's observations in United States v. Arvizu, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). In Arvizu the Court remarked that "a driver’s slowing down, stiffening of posture, and failure to acknowledge a sighted law enforcement officer might well be unremarkable in one instance (such as a busy San Francisco highway) while quite unusual in another (such as a remote portion of rural southeastern Arizona),” and that an officer is entitled to assess that situation. 534 U.S. at 275-76, 122 S.Ct. 744 (emphasis added). Here, however, there is no evidence that anyone in the Suburban had spotted the border patrol agent. Moreover, the Suburban’s presence on southbound 1-95 through Orlando, Florida is much more similar to a busy San Francisco highway than it is to a remote portion of rural Arizona. I-95 is a heavily traveled highway in Florida and Orlando is one of the major metropolitan areas in Florida.