## A08A1594. KLINE v. KDB, INC. et al.
(673 SE2d 516)

ANDREWS, Presiding Judge.

Richard Kline was an invitee at Doc's Food and Spirits, a bar and restaurant owned by KDB, Inc. and located in the City of Smyrna, when he became involved in an altercation with other Doc's invitees. Shortly after the altercation, Smyrna police officers arrived at Doc's to investigate, and Officer Chondra Freeman arrested Kline for disorderly conduct. As a result of these events, Kline brought various claims against KDB, Officer Freeman individually, and the City of Smyrna. Kline appeals from the trial court's grant of summary judgment: (1) in favor of Officer Freeman on his false imprisonment claim; (2) in favor of Officer Freeman on his claim under 42 USC § 1983 that the officer injured him by using excessive force during the arrest; (3) in favor of the City of Smyrna on his claim under 42 USC § 1983 that the injury caused by Freeman's excessive force resulted from the City's policy or custom of inadequate training, supervision, and discipline, or from the City's negligent hiring practices; and (4) in favor of KDB on his claim that the injury he suffered during the arrest was proximately caused by KDB's negligent failure to keep its premises safe for invitees. Kline also appeals from the trial court's ruling excluding testimony from his expert witness. For the following reasons, we affirm.

1. The trial court correctly granted summary judgment in favor of Officer Freeman on Kline's false imprisonment claim.

The intentional tort of false imprisonment is defined as "the unlawful detention of the person of another, for any length of time,

whereby such person is deprived of his personal liberty." OCGA § 51-7-20. The essential elements of the claim are the arrest or detention and the unlawfulness thereof. *Arbee v. Collins*, 219 Ga. App. 63, 66 (463 SE2d 922) (1995). Officer Freeman arrested Kline without a warrant for disorderly conduct. In response to the false imprisonment claim, Freeman asserted that she had probable cause to make the arrest. The existence of probable cause for an officer to make an arrest without a warrant is not a complete defense to a false imprisonment claim because, even if probable cause existed to believe a crime was committed, a warrantless arrest is still unlawful unless made pursuant to one of the exigent circumstances applicable to law enforcement officers in OCGA § 17-4-20 (a). *Arbee*, 219 Ga. App. at 66; *Collins v. Sadlo*, 167 Ga. App. 317, 318-319 (306 SE2d 390) (1983). Pursuant to OCGA § 17-4-20 (a), a law enforcement officer is authorized to make an arrest for a criminal offense without a warrant under the following exigent circumstances:

> if the offense is committed in such officer's presence or within such officer's immediate knowledge; if the offender is endeavoring to escape; if the officer has probable cause to believe that an act of family violence, as defined in Code Section 19-13-1, has been committed; if the officer has probable cause to believe that an offense involving physical abuse has been committed against a vulnerable adult, who shall be for the purpose of this subsection a person 18 years old or older who is unable to protect himself or herself from physical or mental abuse because of a physical or mental impairment; *or for other cause if there is likely to be failure of justice for want of a judicial officer to issue a warrant.*

(Emphasis supplied.)

In *Durden v. State*, 250 Ga. 325, 326 (297 SE2d 237) (1982), the Supreme Court addressed the above-emphasized "failure of justice" exigent circumstance in OCGA § 17-4-20 (a). *Durden* pointed out that the standard for determining whether a warrantless arrest is valid under the U. S. Constitution is "probable cause," and that,

> [u]nder this standard an arrest is constitutionally valid if, at the moment the arrest is made, the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the accused had committed or was committing an offense.

Id. at 326. *Durden* also held that, if an officer in the presence or

vicinity of the accused acquires "probable cause" to arrest the accused under the above federal standard, and the officer fails to make the arrest, "there is likely to be a failure of justice" as set forth in OCGA § 17-4-20 (a) if the officer is required to delay the arrest until a judicial officer issues a warrant. Id. at 327. In other words, *Durden* found that, when an officer acquires probable cause to make a valid warrantless arrest under the U. S. Constitution, then exigent circumstances also exist for a warrantless arrest under OCGA § 17-4-20 (a). *Battle v. State*, 254 Ga. 666, 670-671 (333 SE2d 599) (1985); *Glean v. State*, 268 Ga. 260, 263 (486 SE2d 172) (1997).

Kline claims that Officer Freeman lacked probable cause to arrest him because there was insufficient evidence to prove that he was guilty of the charged offense of disorderly conduct. The issue as to probable cause is not whether evidence established the elements of the offense for which Kline was initially arrested or subsequently prosecuted, but whether, at the time of the arrest, the facts and circumstances within Freeman's knowledge and of which she had reasonably trustworthy information were sufficient to warrant a prudent person in believing that Kline had committed or was committing an offense. *Delong v. Domenici*, 271 Ga. App. 757, 759 (610 SE2d 695) (2005). Under this test, if the objectively viewed facts and circumstances were sufficient to establish probable cause to arrest for some offense, the arrest was not unlawful because the officer subjectively based the arrest on an offense for which probable cause was lacking. *Strickland v. State*, 265 Ga. App. 533, 540 (594 SE2d 711) (2004).

There is evidence that Officer Freeman arrested Kline for disorderly conduct based on personal observations of Kline's conduct after she arrived to investigate the altercation which occurred at Doc's just prior to her arrival. Freeman and another investigating officer testified that, during their investigation, Kline was extremely agitated and yelling obscenities at the other involved parties. Kline testified to the contrary that he remained calm and peaceful while the officers conducted the investigation. Kline's testimony created a factual dispute as to what the officers knew with respect to his conduct in their presence, but the officers also gathered other information from various witnesses, including Kline, during their investigation into what transpired just prior to their arrival at Doc's. In addition to obtaining conflicting stories about what happened during the altercation, Freeman and the other investigating officer testified that Doc's manager informed them that he had told all the involved parties, including Kline, "to leave." The record shows that Kline, who was being interviewed by the officers along with the other involved parties in Doc's parking area, refused to leave, stating that no one had asked him to leave and that he had not finished the meal

YALE LAW LIBRARY

he ordered prior to the altercation. The manager's testimony that he told the officers he did not want any of the involved parties "back inside" is not inconsistent with the officers' testimony that the manager informed them he told the involved parties "to leave." Although the manager also testified that he never told Kline that "he had to be removed off of [the] property," there is no evidence that the manager provided this information to the officers. The record shows that Officer Freeman acquired information from a credible witness, the manager of Doc's, that the manager had told Kline "to leave." This was reasonably trustworthy information sufficient to cause a prudent officer to believe that, after the altercation, Kline violated criminal trespass provisions in OCGA § 16-7-21 by refusing to leave Doc's premises after being told by the manager to depart.

Whether probable cause existed for an arrest is a jury issue to the extent that a dispute exists as to the facts known to the officer relevant to the determination of probable cause. *Hearn v. Batchelor*, 47 Ga. App. 213, 214 (170 SE 203) (1933); *Melton v. LaCalamito*, 158 Ga. App. 820, 823-824 (282 SE2d 393) (1981). Where the facts known to the officer are not disputed, probable cause is an issue of law for the court. *Hearn*, supra; *Melton*, supra; *K-Mart Corp. v. Coker*, 261 Ga. 745, 746 (410 SE2d 425) (1991). "The probable cause inquiry looks to the totality of the circumstances; the standard does not require that officers correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate." *Wright v. City of Philadelphia*, 409 F3d 595, 603 (3rd Cir. 2005). The standard is whether the facts known to the officer, viewed from the standpoint of an objectively reasonable officer, amount to probable cause to arrest. *Maryland v. Pringle*, 540 U. S. 366, 371 (124 SC 795, 157 LE2d 769) (2003). Considering the facts known to Freeman, the trial court correctly granted summary judgment on the false imprisonment claim because, as a matter of law, Freeman had probable cause and exigent circumstances to lawfully arrest Kline without a warrant for criminal trespass. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Although the trial court granted summary judgment in favor of Freeman on this claim for other reasons, a judgment right for any reason will be affirmed. *City of Gainesville v. Dodd*, 275 Ga. 834 (573 SE2d 369) (2002).

2. The trial court correctly granted summary judgment in favor of Officer Freeman on Kline's claim pursuant to 42 USC § 1983 that Freeman used excessive force during the arrest.

Kline claims that Officer Freeman used excessive force during the arrest because the handcuffs Freeman placed on him were too tight and injured his wrists. According to Kline, during the period he was handcuffed and walked to the police car by Freeman, he "might

have said that [the handcuffs] were a little tight." A witness at the scene of the arrest testified that Kline said the handcuffs were "too tight" as he got into the police car. Kline said he told Freeman that the handcuffs were tight when he was in the police car. He said the handcuffs became tight in the police car because, as he sat in the back seat of the car with his hands cuffed behind his back, this forced the handcuffs against his back and caused them to tighten. Although the record shows that double-locking the handcuffs would have prevented them from tightening under pressure, Officer Freeman did not double-lock the handcuffs, even though double-locking was the policy of the Smyrna Police Department. Kline remained handcuffed in the police car during a two- to four-mile ride to the detention facility. When asked if he complained to Freeman that the handcuffs were hurting him, Kline testified, "I don't believe so." Kline agreed that he never complained to Freeman that the handcuffs were painful because he "knew how to handle the pain." After Freeman uncuffed him upon arrival at the detention facility, Kline later told a detention officer that the manner in which Freeman put the handcuffs on him was "uncomfortable" and that his wrists hurt or were sore. Kline never requested medical treatment from the police. At some point after the arrest, Kline noticed red marks on his wrists, and the day after the arrest he noticed bruising on his wrists and numbness in his hands. He sought medical attention the day after the arrest, and produced medical evidence that, in addition to bruising on both wrists, the handcuffs caused nerve contusions resulting in numbness in his first finger and thumb on each hand.

The basis for Kline's excessive force claim under 42 USC § 1983 is that, during the arrest, Officer Freeman violated his Fourth Amendment right to be free from unreasonable seizure. *Bell v. City of Albany*, 210 Ga. App. 371, 374-375 (436 SE2d 87) (1993). Freeman asserted qualified immunity, a defense which

> gives government officials performing discretionary functions complete protection from individual claims brought pursuant to 42 USC § 1983, if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U. S. 800, 818 (102 SC 2727, 73 LE2d 396) (1982).

*Whitten v. Wooten*, 285 Ga. App. 281 (671 SE2d 317) (2008). It is undisputed that Officer Freeman was performing a discretionary function when she arrested Kline. *Rodriguez v. Kraus*, 275 Ga. App. 118, 119 (619 SE2d 800) (2005). Freeman's qualified immunity defense is analyzed under a two-step process in which the court first

considers whether the facts (construed in the light most favorable to Kline) show that Freeman's conduct violated a constitutional right. *Saucier v. Katz*, 533 U. S. 194, 201 (121 SC 2151, 150 LE2d 272) (2001). If the facts so construed do not show that a constitutional right was violated, "there is no necessity for further inquiries concerning qualified immunity." Id. at 201. If the violation of a constitutional right has been shown, the court considers in the second step whether the right was clearly established. Id.

The threshold inquiry is whether, construing the facts in favor of Kline, the record shows that Officer Freeman's actions constituted excessive force in violation of the Fourth Amendment. A claim that an officer used excessive force during an arrest is "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U. S. 386, 388 (109 SC 1865, 104 LE2d 443) (1989); *Bell*, 210 Ga. App. at 374. We ask whether Officer Freeman's actions were "objectively reasonable" under the facts and circumstances confronting the officer, regardless of the officer's underlying intent or motivation. *Graham*, 490 U. S. at 396-397. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U. S. at 396. Using this perspective, we "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." (Citation and punctuation omitted.) *Scott v. Harris*, 550 U. S. 372 (127 SC 1769, 1778, 167 LE2d 686) (2007). Whether Officer Freeman's actions were objectively reasonable under the facts construed in Kline's favor "is a pure question of law." Id. at 1776, n. 8.

Kline does not contend that he had a right not to be handcuffed during the arrest, but that he had a right not to be handcuffed too tightly. Kline was handcuffed behind his back for the short period of time it took Freeman to walk him to the adjacent police car and transport him to the detention facility two to four miles away. He produced medical evidence that he suffered significant injury during this period caused by Officer Freeman's use of handcuffs which were too tight. Although Kline said he might have told Freeman the handcuffs were "a little tight" as he walked to the police car, it was not until he got into the car and felt the handcuffs tighten under pressure that he complained the handcuffs were tight. Kline never told Freeman at any time that the handcuffs were causing him pain or injury, and there is no evidence that he displayed visible signs of pain or injury during the time he was handcuffed. There is no evidence that Freeman otherwise had notice that the handcuffs were causing Kline significant pain or injury.

Kline contends that, under these circumstances, Officer Freeman should have immediately responded and loosened the handcuffs before he arrived at the detention facility, and that her failure to do so constituted use of excessive force in violation of the Fourth Amendment. Kline also contends that Freeman's failure to double-lock the handcuffs to prevent them from tightening constituted use of excessive force in violation of the Fourth Amendment. On the present facts and circumstances, we find that Officer Freeman's actions were objectively reasonable under the Fourth Amendment. "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," *Graham*, 490 U. S. at 396, and "the typical arrest involves some force and injury." *Rodriguez v. Farrell*, 280 F3d 1341, 1351 (11th Cir. 2002). When taking an arrestee into custody, it is standard police practice to apply handcuffs, which by their nature are restrictive and uncomfortable. *Davenport v. Rodriguez*, 147 FSupp.2d 630, 637 (S.D. Tex. 2001). Evidence that Kline suffered injury was not alone enough to establish that Freeman acted unreasonably. We do not use hindsight to judge Officer Freeman's actions in light of resulting injuries, but consider what she knew or reasonably should have known at the time of her actions. Moreover, we reject Kline's contention that Freeman's failure to double-lock the handcuffs to prevent tightening was excessive force per se. Rather, we find under the present facts and circumstances that Freeman had no actual or constructive knowledge that the handcuffs were so tight they were causing Kline significant pain or injury, and that it was reasonable for Freeman to complete the short drive to the detention facility and then remove the handcuffs. See *Gilles v. Davis*, 427 F3d 197, 207-208 (3rd Cir. 2005); *Katzka v. Leong*, 11 Fed. Appx. 854, 856 (9th Cir. 2001); *Shaw v. City of Redondo Beach*, 2005 U. S. Dist. LEXIS 46361 at *22-*32 (C. D. Calif. 2005). Because Officer Freeman's actions were objectively reasonable under the circumstances, there was no Fourth Amendment violation and Freeman was entitled to summary judgment. *Saucier*, 533 U. S. at 201; *Lau's Corp.*, supra.

3. In the absence of any Fourth Amendment violation by Officer Freeman during the arrest, there is no basis for Kline's claim against the City of Smyrna under 42 USC § 1983 that a City policy, custom, or hiring practice authorized the alleged Fourth Amendment violation. *City of Los Angeles v. Heller*, 475 U. S. 796, 799 (106 SC 1571, 89 LE2d 806) (1986); *Long v. Slaton*, 508 F3d 576, 583, n. 10 (11th Cir. 2007); *Bell*, 210 Ga. App. at 373-374, n. 1. It follows that the trial court correctly granted summary judgment in favor of the City of Smyrna on this claim.

4. The trial court also correctly granted summary judgment in favor of KDB, Inc. on Kline's claim that the injury he suffered while being arrested by Officer Freeman was proximately caused by KDB's negligent failure to keep Doc's premises safe for invitees as required by OCGA § 51-3-1. As an invitee at Doc's, Kline claims that KDB (acting through Doc's employees) negligently failed to protect him from being assaulted by other Doc's invitees during the altercation at issue, and negligently suggested to Smyrna police investigating the altercation that he, rather than other invitees, caused the trouble. Kline claims that this negligence led him to be "extremely frustrated" and proximately caused his wrongful arrest and injury he suffered during the arrest.

Kline was required to prove as an essential element of this negligence claim that the alleged negligence was a proximate cause of his injury. *Bradley Center, Inc. v. Wessner*, 250 Ga. 199, 200 (296 SE2d 693) (1982). As a general rule, a determination as to proximate cause is a jury issue, but in plain and undisputed cases the issue is one of law for the court. *McAuley v. Wills*, 251 Ga. 3, 7 (303 SE2d 258) (1983). This is such a plain and undisputed case. Assuming, without deciding, that KDB negligently violated a duty under OCGA § 51-3-1 to keep the premises safe for Kline, we find as a matter of law that this negligence was too remote to constitute a proximate cause of the injury Kline suffered when he was subsequently arrested by Officer Freeman.

We found in Division 1, supra, that Officer Freeman had probable cause to arrest Kline. In addressing KDB's motion for summary judgment, we assume that Kline's version of events is true, and assume that some of the facts used by Officer Freeman to establish probable cause were erroneous or were negligently supplied to the officer by Doc's employees. Nevertheless, we find that Freeman's use of handcuffs in a manner that injured Kline was a subsequent act that intervened between the injury and KDB's original negligence, and was the sole proximate cause of the injury. Even if KDB's original negligence to some extent contributed to Kline's injury during the arrest, and was a cause in fact of the injury, the original negligence is considered too remote to constitute a proximate cause of the injury because handcuffing Kline too tightly was an intervening act by Officer Freeman which was not foreseeable to KDB, was not triggered by the original negligence, and was sufficient by itself to cause Kline's injury. *Ontario Sewing Machine Co. v. Smith*, 275 Ga. 683, 686 (572 SE2d 533) (2002); *Cieplinski v. Caldwell Electrical Contractors*, 280 Ga. App. 267, 275 (633 SE2d 646) (2006).

5. Finally, Kline contends that the trial court erred by granting the City of Smyrna's motion to exclude certain opinion testimony

from his expert witness. Kline produced a retired FBI agent who, based on his training and experience in law enforcement, rendered an opinion that Officer Freeman used excessive force in violation of the Fourth Amendment because she failed to double-lock the handcuffs, despite standard police practice and Smyrna Police Department policy to the contrary. As set forth in Division 2, supra, Kline's Fourth Amendment excessive force claim is analyzed under an objective reasonableness standard, and, once the facts were construed in favor of Kline, whether Officer Freeman's actions were objectively reasonable was a question of law for the trial court. The trial court correctly refused to consider the expert's opinion on a question of law for the court. Because the trial court correctly found that Officer Freeman did not use excessive force in violation of Kline's Fourth Amendment rights (see Division 2, supra), the expert's additional opinions relating to City of Smyrna liability under 42 USC § 1983 were not relevant. See Division 3, supra. We find no error.

*Judgment affirmed. Bernes and Doyle, JJ., concur.*

DECIDED JANUARY 30, 2009.

*Weinstock & Scavo, Michael Weinstock, Matthew W. Carlton*, for appellant.

*Gray, Rust, St. Amand, Moffett & Brieske, Harvey S. Gray, Christopher M. Ziegler, Carothers & Mitchell, Richard A. Carothers, Cheryl Benton Reid*, for appellees.