[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-12900
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Aug. 31, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-60476 CV-WPD

MARLENE WHITTIER,
as Personal Representative of the Estate
of Anthony Diotaiuto deceased and individually,
ANDREW DIOTAIUTO,

                                        Plaintiffs-Appellees,

                    versus

ANDRE BRUNA, individually,
SEAN VISNERS, individually,

                                        Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 31, 2009)

Before EDMONDSON, BLACK and SILER,[*] Circuit Judges.

PER CURIAM:

_____

[*] Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

Andre Bruna and Sean Visners, two officers with the City of Sunrise, Florida, Police Department, appeal the district court's order denying in part their motion for summary judgment. Bruna and Visners were members of a Special Weapons and Tactics (SWAT) team that conducted a raid on Plaintiff-Appellee Marlene Whittier's home, which she shared with her son, Anthony Diotaiuto. During the raid, Diotaiuto was shot and killed. Whittier brought a 42 U.S.C. § 1983 action, both individually and as personal representative for Diotaiuto's estate, against several members of the SWAT team alleging, *inter alia*, Bruna and Visners violated her son's Fourth Amendment rights when they entered her home without first knocking and announcing their presence. After extensive discovery, Bruna and Visners moved for summary judgment, arguing they were entitled to qualified immunity and no genuine issue of material fact existed as to whether a knock and announce occurred. The district court denied their motion as to Whittier's knock-and-announce claim. Because Bruna and Visners are entitled to qualified immunity, we now reverse.

## I. FACTS

In July 2005, one of Anthony Diotaiuto's neighbors informed the City of Sunrise Police Department (Sunrise police) that Diotaiuto was selling large quantities of cannabis and cocaine from his residence. Based upon this

information, law enforcement began an investigation of Diotaiuto's drug activity, which included surveillance of the Whittier/Diotaiuto residence and a "controlled buy" of marijuana by a confidential informant. In addition to evidence that Diotaiuto was selling illegal narcotics in his home, the investigation also revealed Diotaiuto carried a handgun on his person at all times and kept a loaded shotgun in his bedroom closet.

On August 3, 2005, a state circuit judge signed a warrant for the Sunrise police to search the Whittier/Diotaiuto home. Based upon Diotaiuto's drug activity and possession of firearms, the Sunrise police classified the warrant as "high risk," which the Sunrise police define as "involving acts of violence or potential acts of violence." The Sunrise police use a SWAT team in the service of all "high risk" warrants, and thus a SWAT team was assembled to serve the warrant on the Whittier/Diotaiuto residence.

In preparation for the service of the warrant, the Sunrise police made a SWAT operational plan. This plan indicated Diotaiuto sold illegal narcotics from his home, had a criminal history, and possessed two firearms—a semi-automatic handgun carried on his person and a shotgun kept in his bedroom closet. The plan also called for an eight-man SWAT team to execute the warrant; a team leader was responsible for knocking and announcing the presence of the SWAT team prior to

entry, while appellants Bruna and Visners were positioned "in the stack." The members of the SWAT team received and reviewed the information in the operational plan during a briefing that was held in the early morning hours of August 5, 2005.[1]

Following the briefing, at just after 6:00 a.m. on that same day, the SWAT team arrived at the Whittier/Diotaiuto residence to execute the warrant. According to the testimony of the officers, the SWAT team leader approached the door, knocked loudly several times, and announced the presence of the Sunrise police and the search warrant. Fourteen police officers present at the scene testified they heard a knock and announce. Only a single officer did not hear a knock and announce. Despite the fact that nearly every officer present heard a loud and forceful knock and announce, not a single neighbor heard a knock or an announcement of the police presence. At least three neighbors testified they were listening and would have been able to hear such an announcement if it had occurred.

Next, the SWAT team leader signaled for the breach team to open the front door. After the door was pried open, the SWAT team entered the home and

---

[1] Visners did not attend this briefing; he instead was privately briefed by the SWAT team leader at approximately 5:40 a.m. the same morning.

encountered Diotaiuto, who was instructed to "get on the ground." Diotaiuto did not comply with the order and instead ran to his bedroom. Bruna and Visners followed in pursuant, kicked open the bedroom door, and followed Diotaiuto inside. According to the testimony of the officers, Diotaiuto entered his closet, racked a gun, and pointed it at the officers. Both Bruna and Visners were yelling at Diotaiuto to put the gun down. They then opened fire, and Diotaiuto fell back into the closet. From a seated position in the closet, Diotaiuto began to raise his gun again. Both officers yelled at Diotaiuto to drop the gun; their commands, however, were disregarded. Bruna and Visners fired again, and Diotaiuto was killed.

## II. STANDARD OF REVIEW

This Court reviews "*de novo* a district court's disposition of a summary judgment motion based on qualified immunity, applying the same legal standards as the district court." *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003). We resolve all issues of material fact in favor of the plaintiff, and then, under that version of the facts, determine the legal question of whether the defendant is entitled to qualified immunity. *Id.*

## III. DISCUSSION

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515 (2002)). "[T]o receive qualified immunity, an official must first establish that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)).

"If the official was acting within the scope of his discretionary authority . . . the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity." *Skop v. City of Atlanta*, 485 F.3d 1130, 1136–37 (11th Cir. 2007). "To overcome qualified immunity, the plaintiff must satisfy a two prong test; he must show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the

6

situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S. Ct. 2152, 2156 (2001).

Whittier asserts Bruna and Visners entered her and her son's residence without first knocking and announcing their presence in violation of the Fourth Amendment. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In *Wilson v. Arkansas*, 514 U.S. 927, 929, 115 S. Ct. 1914, 1915 (1995), the Supreme Court held the Fourth Amendment reasonableness inquiry incorporated the common law requirement that officers, when executing a search warrant, must knock on a door and announce their identity before attempting a forcible entry into a home. The Court, however, recognized "[t]he Fourth Amendment's flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests," *id.* at 934, 115 S. Ct. at 1918, and noted the knock-and-announce requirement could give way "under circumstances presenting a threat of physical violence," or "where police officers have reason to believe that evidence would likely be destroyed if advance notice were given," *id.* at 936, 115 S. Ct. at 1919.

Following *Wilson*, some courts created a blanket exception to the knock-and-announce requirement in felony drug cases, based in part on the generalization that these cases often involve a threat of violence and destruction of drugs. *See Richards v. Wisconsin*, 520 U.S. 385, 392, 117 S. Ct. 1416, 1420 (1997). In *Richards v. Wisconsin*, however, the Supreme Court rejected such a categorical exception and instead adopted a case-by-case approach for determining if law enforcement acted reasonably in entering a residence without first knocking and announcing: "In order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Id.* at 394, 117 S. Ct. at 1421. The Court acknowledged, however, "[t]his showing is not high." *Id.*, 117 S. Ct. at 1422.

Both *Wilson* and *Richards* were criminal cases in which the defendants had moved to suppress evidence based upon alleged Fourth Amendment violations. In the context of qualified immunity, this Court has stated "the issue is not whether reasonable suspicion existed in fact, but whether the officer had 'arguable' reasonable suspicion." *Jackson v. Sauls*, 206 F.3d 1156, 1166 (11th Cir. 2000). In other words, we analyze whether a reasonable officer could have had reasonable

8

suspicion that exigent circumstances, such as a threat of violence and/or destruction of evidence, existed to justify the no-knock entry. *See Brent v. Ashley*, 247 F.3d 1294, 1303 (11th Cir. 2001) (discussing the arguable reasonable suspicion standard within the context of strip searches). In undertaking the arguable reasonable suspicion inquiry, this Court must examine the totality of the circumstances to determine whether an officer had a "particularized and objective" basis to support his suspicion. *Id.* at 1304. Whether the officer's suspicion ends up being mistaken is immaterial so long as it was reasonable. *Id.* at 1303.

Within the context of warrantless searches, we have held the mere presence of contraband, without more, does not give rise to exigent circumstances. *United States v. Tobin,* 923 F.2d 1506, 1510 (11th Cir. 1991). At the same time, however, we have also repeatedly noted the dangerous, and often violent, combination of drugs and firearms, *see, e.g.*, *United States v. Hromada*, 49 F.3d 685, 689 (11th Cir. 1995) ("Guns and violence go hand-in-hand with illegal drug operations."), and several of our sister circuits have concluded this combination may give rise to reasonable suspicion of danger and justify a no-knock entry, *see United States v. Stevens*, 439 F.3d 983, 988–89 (8th Cir. 2006) (affirming a magistrate judge's conclusion that a no-knock search was justified based upon the presence of drugs and a sawed-off shotgun in a common area of the house); *United States v.*

*Washington*, 340 F.3d 222, 227 (5th Cir. 2003) (stating information that "the suspect was selling drugs and was typically armed. . . . exceeds the level this circuit has found sufficient to establish a reasonable suspicion of danger").

In this case, we conclude Bruna and Visners are entitled to qualified immunity because a reasonable officer could have had reasonable suspicion that knocking and announcing his presence would have been dangerous under the circumstances facing the SWAT team.[2] Those circumstances included serving a search warrant on the home of a suspected drug dealer (Diotaiuto), who had ready access to firearms and occupied the premises when the SWAT team arrived to serve the warrant. Indeed, based upon the information available to the SWAT team, Diotaiuto (1) received and sold narcotics, including cocaine and marijuana, at his residence; (2) had a criminal history; (3) carried a concealed semi-automatic handgun on his person; and (4) possessed a shotgun that he kept in his bedroom. This information, which was contained in the SWAT team's operational plan and received and reviewed by the members of the team, provided a "particularized and

---

[2] We are aware that the officers maintain a knock and announcement took place and that fourteen officers have testified to that effect. Whether a knock and announcement actually occurred, however, is irrelevant to our analysis of arguable reasonable suspicion, and thus the outcome in this case is the same under both the officers' and Whittier's versions of the facts.

10

objective" basis for a reasonable officer to suspect the situation had a potential for violence and to believe exigent circumstances existed to justify a no-knock entry.[3]

The fact that the operational plan called for a knock and announce prior to entry does not alter our analysis. Even assuming the operational plan, which was prepared prior to the service of the warrant, speaks for what Bruna and Visners actually believed as they stood "in the stack" outside the Whittier/Diotaiuto residence, the officers' *subjective* beliefs regarding the circumstances are irrelevant to the qualified immunity inquiry. *See Harlow v. Fitzgerald*, 457 U.S. 800, 817–18, 102 S. Ct. 2727, 2737–38 (1982) (discarding the subjective component of the qualified immunity inquiry and adopting the "objective reasonableness" standard); *Jackson*, 206 F.3d at 1165 ("[T]he standard for determining if an officer violated clearly established law is an objective one and does not include inquiry into the officer's subjective intent or beliefs."). Moreover, we have held an officer is entitled to qualified immunity even when he

---

[3] Our inquiry is whether Bruna and Visners had arguable reasonable suspicion that exigent circumstances existed to justify a no-knock entry, and thus we specifically decline to address whether exigent circumstances did indeed exist under the facts of this case. In a footnote of its order denying the SWAT team leader's motion for summary judgment as to the knock-and-announce claim, the district court concluded no exigent circumstances existed. On appeal, we do not disturb this determination because the pertinent inquiry is not whether exigent circumstances *actually* existed, but whether a reasonable officer, acting under the same circumstances and possessing the same knowledge as Bruna and Visners, *could have believed* they did. *See Jackson*, 206 F.3d at 1165–66.

reasonably, but mistakenly, believes reasonable suspicion is present, *see Brent*, 247 F.3d at 1303; it makes little sense to not afford the same protection to an officer who, sensitive to the rights citizens enjoy under the Constitution, initially, but mistakenly, believes the situation involves a constitutional protection, but later learns it does not.

## IV.  CONCLUSION

In sum, we conclude Bruna and Visners are entitled to qualified immunity on Whittier's knock-and-announce claim.  Accordingly, we reverse the district court's order denying their motion for summary judgment as to this claim.[4]

**REVERSED.**

---

[4] Because we conclude Bruna and Visners are entitled to summary judgment on the basis of qualified immunity, we need not address the second issue they raise on appeal—that is, whether they are entitled to summary judgment on the ground that no genuine issue of material fact existed as to whether a knock and announce actually occurred.  We note, however, we likely would not have jurisdiction to consider this issue on an interlocutory appeal, as it is not a part of, or inextricably intertwined with, the core qualified immunity issue. *See Behrens v. Pelletier,* 516 U.S. 299, 312–13, 116 S. Ct. 834, 842 (1996); *Koch v. Rugg*, 221 F.3d 1283, 1295–96 (11th Cir. 2000).