[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

———————————————

No. 21-12290

———————————————

TYLER L. BRIENZA,

Plaintiff-Appellant,

*versus*

CITY OF PEACHTREE CITY, GEORGIA,
ADAM C. WADSWORTH,
MARK A. WILLIAMS,

Defendants-Appellees.

———————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 3:17-cv-00134-TCB

———————————————

Before WILLIAM PRYOR, Chief Judge, LUCK, Circuit Judge, and MOORER,[*] District Judge.

PER CURIAM:

Tyler Brienza was arrested for obstructing an investigation into an underage drinking party. Brienza sued the arresting officers for violating his First and Fourth Amendment rights and sued the officers and Peachtree City for false imprisonment under Georgia law. The district court granted summary judgment for the officers and Peachtree City on all claims, and Brienza now appeals. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### The Investigation

In September 2015, a Peachtree City parent posted on Facebook that her underage daughter received a flyer while at McIntosh High School's homecoming dance for a party "possibly involving underage drinking." The flyer advertised that an "after party" would take place that same night at 9:00 p.m. at "Walsh's" where

---

[*] The Honorable Terry F. Moorer, United States District Judge for the Southern District of Alabama, sitting by designation.

[1] The facts are largely undisputed. Because Brienza is the non-moving party, we discuss the facts in the light most favorable to him. *See Cowen v. Ga. Sec'y of State*, 960 F.3d 1339, 1342 (11th Cir. 2020) ("In reviewing the propriety of summary judgment, we view the evidence in the light most favorable to the non-moving party." (quotation omitted)).

"Luigi's Famous Jungle Juice on site would be available with a $5 charge for guys" and "ladies were free as always."

Lieutenant Matt Myers of the Peachtree City police department saw the post and forwarded it to Officer Jamaal Greer, the "school resource officer." Officer Greer informed the school principal and identified a recent graduate with the last name Walsh. Officer Greer contacted the recent graduate's mother "who advised that she was in Australia and that she wanted someone to shut the party down."

Corporal Mark Williams and Officer Adam Wadsworth went to investigate the "possible underage drinking party." They arrived at the house around 10:00 p.m. Typically, when the officers arrive at underage drinking parties in Peachtree City, they hear music playing and observe lights on, multiple golf carts in the driveway, and people fleeing from the scene. But the house was dark and quiet. And the officers observed "no one else outside," "no kids drinking in the front yard," no one running from the house, and no "bottles or anything around the house," and they heard no music playing. "On scene," there was "[n]othing" that indicated "there was a party going on."

As the officers approached the house, Corporal Williams remarked to Officer Wadsworth that the flyer "might be a trick" because there was no sign of a party. The officers called in the license plate of the car in the driveway, and dispatch informed them that the vehicle belonged to Brienza and provided his address.

Meanwhile, Officer Wadsworth walked around the house and saw people inside toward the back of the house.

The officers knocked on the front door. Brienza and the resident, Brian Walsh, opened the door, and the officers "could . . . see inside the house." They saw "a hallway leading into a back room where the light was on," and they could "hear people," but "[i]t wasn't loud." Looking at Brienza and Walsh, the officers observed "absolutely no signs that either of them had alcohol either in their hands or [that] they ingested any alcohol." "There was no indication whatsoever that a crime was being committed," and Corporal Williams "didn't believe there was a party going on at the time."

Corporal Williams asked if he could speak to Brienza and Walsh, so the two stepped outside. Corporal Williams asked if they were alone, and Brienza declined to answer. Corporal Williams asked for Brienza's name, and Brienza declined to answer again. Corporal Williams became "upset," "[d]isappointed," and "somewhat annoyed." But Brienza's refusal to answer questions did not "impede" Corporal Williams from questioning Walsh.

Walsh asked what "this [wa]s about," and Corporal Williams explained that he was investigating an "illegal party" at the address and Brienza and Walsh were "required" to provide their name and address. Walsh said that there was "nothing illegal going on," and Corporal Williams responded, "not yet." Walsh was "very open in talking" with the officers and answered their questions. Walsh provided his name to the officers and explained that: (1) there was no illegal activity happening at the house; (2) there

were only four people at the house, all over the legal drinking age; (3) Walsh was twenty-six years old and Brienza was twenty-five years old; and (4) Walsh had nothing to do with the flyer.

Corporal Williams asked Brienza for his name and birthdate. Corporal Williams explained that he was conducting an investigation and that Brienza was required by law to provide his name and birthdate, because otherwise Brienza would be obstructing the investigation. Brienza asked if he was being detained, and Corporal Williams responded yes, that he was being detained for his refusal to answer questions. Brienza didn't want to answer any questions, and Corporal Williams said that he could "respect" that, but he only needed Brienza's name and birthdate. Brienza gave his first name but refused to give his last name and birthdate. Throughout the encounter, Brienza did not act "in any manner that would support a disorderly conduct charge," raise his voice, or use any "fighting words."

*The Arrest*

Corporal Williams placed Brienza under arrest, saying that Brienza was "going to sit in jail a long time" if he didn't give "somebody" his "information." Corporal Williams arrested Brienza for obstructing the investigation by "not providing his identification." After arresting Brienza, Corporal Williams asked Walsh for Brienza's full name and Walsh provided it. The officers looked up Brienza from their onboard computer and obtained Brienza's driver's license number and birthdate. Corporal Williams decided to bring Brienza to jail, and Officer Wadsworth assisted in Brienza's

arrest and detention, serving as the official arresting officer on record.

Officer Wadsworth transported Brienza to the police station, prepared the incident report, and issued Brienza a citation. The citation charged Brienza with "resisting or interfering with an officer" by failing to provide identification during an investigation, in violation of Peachtree City Ordinance section 50-2. Brienza was transferred to jail and released on bond about twenty-two hours later.

### The Criminal Proceedings

The state prosecutor upgraded Brienza's charge to "obstruction of an officer" for "interfering" with the officers' investigation and "refusing to follow instructions," in violation of Georgia Code section 16-10-24(a). And the state prosecutor also charged Brienza with "disorderly conduct" for using "opprobrious or abusive words[,] which by their very utterance tend to incite . . . an immediate breach of the peace and which . . . would provoke violent resentment," in violation of Georgia Code section 16-11-39.

The criminal trial started in October 2019. Before the jury was called in, the state dropped the disorderly conduct charge. After the close of evidence on the obstruction charge, Brienza moved for a directed verdict. The state court denied the motion and submitted the case to the jury because "Walsh was willing to speak to the officers" and Brienza interrupted the officers' conversation with Walsh "between two and four times." But the state court also

ruled that the officers lacked reasonable suspicion to believe that a crime was being committed in the house, so "Brienza had the right to walk away" and refuse to answer questions. The state later contended that, if the court's ruling was correct, there could not be obstruction. Based on that position, the state moved to dismiss the charge without objection, and the case was dismissed.

## The Civil Lawsuit

Brienza sued the officers and Peachtree City in the Northern District of Georgia while awaiting his criminal trial. Brienza sued the officers under 42 U.S.C. section 1983 for false arrest and malicious prosecution under the Fourth Amendment, and retaliatory arrest under the First Amendment. He also sued the officers and Peachtree City for false imprisonment under Georgia law.[2]

The district court stayed the case while the criminal charges were pending, and reopened the case after the charges were dropped. Then, the officers and Peachtree City moved for summary judgment on all claims. They argued that: (1) the officers "had both actual and arguable probable cause to arrest and charge Brienza" for obstruction; (2) the probable cause defeated the First

---

[2] Brienza also brought state law claims for negligence, false arrest, and attorney's fees. Brienza hasn't appealed the summary judgment for the defendants on these negligence and false arrest claims. And although he contends that "his derivative claim for attorney's fees should be reinstated" because "the dismissal of [his] claims of false arrest, retaliation[,] and malicious prosecution w[as] in error," we affirm the dismissal of these claims. Because the attorney's fees claim depends on them, it also fails.

Amendment retaliatory arrest claim; (3) the officers were entitled to qualified immunity under federal law; (4) the state law false imprisonment claim against the officers was "barred by official function, discretionary immunity"; and (5) Peachtree City could not be held vicariously liable under state law for the officers' actions.

Brienza opposed the summary judgment motion. As to the Fourth and First Amendment claims, Brienza argued that: (1) the officers lacked reasonable suspicion because "they observed absolutely no evidence of a party"; (2) no probable cause existed to arrest Brienza for obstruction because, without reasonable suspicion, "Brienza was free to leave—and free to refuse to answer questions or provide his identification"; (3) the officers were not entitled to qualified immunity because it was clearly established that, without reasonable suspicion, refusal to cooperate did not justify a detention; and (4) because there was no probable cause, the arrest was retaliatory under the First Amendment.

As to the state law false imprisonment claim, Brienza argued that the officers were liable "for the same reasons they [we]re liable for violating his Fourth Amendment rights: they detained him without reasonable suspicion and arrested him without probable cause." And Brienza argued that Peachtree City was liable under state law for the officers' wrongful acts "through the respondeat superior doctrine" because Peachtree City "waived [its] defense of 'sovereign immunity' . . . through its purchase of insurance coverage for police misconduct."

The district court granted summary judgment for the officers and Peachtree City on all claims. As to the Fourth Amendment false arrest and malicious prosecution claims, the district court concluded that the officers were entitled to qualified immunity because there was "reasonable suspicion to initiate the stop" and no clearly established law prohibited the officers from arresting a suspect for obstruction during an investigatory stop that was supported by reasonable suspicion.

The First Amendment retaliatory arrest claim failed on similar grounds. The district court explained that a "retaliatory arrest claim [wa]s barred by qualified immunity" unless Brienza showed "that a reasonable officer would know that he lacked probable cause" under clearly established law. The district court concluded that Brienza failed to make that showing. The district court recognized that, in *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019), the Supreme Court created an exception to this rule: the district court described *Nieves* as holding that a "retaliatory arrest claim [could] proceed even if the arrest was supported by probable cause." But, the district court pointed out, Brienza "was arrested in 2015," four years before *Nieves*. In 2015, the district court concluded, it wasn't clearly established that officers violated the First Amendment where there was probable cause for an arrest.

Brienza's state law claim failed, too. The district court concluded that the officers were entitled to official immunity under Georgia law on the false imprisonment claim because Brienza failed to show that the officers acted with a "wicked or evil

motive." And the district court rejected the state law claim against Peachtree City because "probable cause existed as a matter of [state] law." The district court assumed that Peachtree City waived sovereign immunity (by buying insurance) and could be vicariously liable for the actions of its officers. But the district court explained that a warrantless arrest was lawful where the arrest was "both supported by probable cause and made pursuant to one of the exigent circumstances applicable to law enforcement officers." The district court concluded that "the so-called exigent circumstances requirement [wa]s met" because "Brienza's refusal to cooperate" occurred in front of the officers. And, "as a matter of state law, there was probable cause" because the state court in Brienza's criminal proceedings "denied his motion for a directed verdict" and "such a denial [wa]s conclusive evidence that there was probable cause."

## STANDARD OF REVIEW

We review *de novo* the district court's grant of summary judgment. *Washington v. Howard*, 25 F.4th 891, 897 (11th Cir. 2022). We view the evidence "in the light most favorable to the non-moving party" and "resolve all reasonable doubts about the facts in favor of the non-movant." *Id.* (citation omitted).

## DISCUSSION

We divide our discussion into two parts. First, we address Brienza's arguments that the district court erred in granting summary judgment for the officers on his false arrest and malicious

prosecution claims under the Fourth Amendment, and his retaliatory arrest claim under the First Amendment. Then, we consider Brienza's contentions that the district court erred in granting summary judgment for the officers and Peachtree City on Brienza's state law claim for false imprisonment.

### Federal Claims

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Whittier v. Kobayashi*, 581 F.3d 1304, 1307 (11th Cir. 2009) (quotation omitted). "To receive qualified immunity, an official must first establish that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Id.* (alteration adopted and quotation omitted).

"If the official was acting within the scope of his discretionary authority . . . the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity." *Id.* at 1308 (quotation omitted). "To overcome qualified immunity, the plaintiff must satisfy a two prong test; he must show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Id.* (quotation omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (quotation omitted).

Here, it is undisputed that the officers were acting within the scope of their discretionary authority, so the burden shifts to Brienza to show that: (1) the officers violated one of his constitutional rights; and (2) the constitutional right was clearly established at the time of the alleged violation. Brienza argues that the officers violated his Fourth Amendment rights by falsely arresting and maliciously prosecuting him, and they violated his First Amendment rights through a retaliatory arrest.

### Fourth Amendment False Arrest Claim

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, . . . against unreasonable . . . seizures, shall not be violated." U.S. CONST. amend. IV. "Because arrests are 'seizures' of 'persons,' they must be reasonable under the circumstances." *District of Columbia v. Wesby*, 138 S. Ct. 577, 585 (2018). And "[a] warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence." *Id.* at 586.

"[T]he correct legal standard to evaluate whether an officer had probable cause to seize a suspect is to 'ask whether a reasonable officer could conclude that there was a substantial chance of criminal activity.'" *Washington*, 25 F.4th at 902 (quoting *Wesby*, 138 S. Ct. at 588) (alteration adopted). Probable cause determinations depend on the totality of the circumstances. *Wesby*, 138 S. Ct. at 586. Probable cause "is not a high bar" and "requires only the kind of fair probability on which reasonable and prudent people, not legal technicians, act." *Kaley v. United States*, 571 U.S. 320,

338 (2014) (alterations adopted and quotation omitted). And "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

By contrast, reasonable suspicion "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *United States v. Lindsey*, 482 F.3d 1285, 1290 (11th Cir. 2007) (quotation omitted). "To have reasonable suspicion, an officer conducting a stop must have a reasonable, articulable suspicion based on objective facts that the person has engaged in, or is about to engage in, criminal activity." *Id.* (quotation omitted). If reasonable suspicion exists, the suspect can be detained. *See id.* And "reasonable suspicion of criminal activity may be formed by observing exclusively legal activity, even if such activity is seemingly innocuous to the ordinary citizen." *Id.* (internal quotations and citations omitted).

Brienza's argument that the officers violated his Fourth Amendment rights includes two premises. First, "[a]ny reasonable articulable suspicion the officers had regarding an alleged 'illegal party' at . . . Walsh's house evaporated within minutes of their arrival at the residence." Second, when officers lack reasonable suspicion, an encounter is voluntary, so Brienza "had the right to refuse to answer any questions and was free to retreat back into the home." Brienza concludes that the officers violated his Fourth Amendment rights when they arrested him for refusing to

cooperate because such refusal could not support reasonable suspicion. *See Florida v. Bostick*, 501 U.S. 429, 437 (1991) ("We have consistently held that a refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure."); *Florida v. Royer*, 460 U.S. 491, 497–98 (1983) (plurality opinion) (explaining that, absent reasonable suspicion, "[t]he person approached . . . need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way" and "his refusal to listen or answer does not, without more, furnish" reasonable suspicion).

Both premises are mistaken. The officers could lawfully detain Brienza after he stepped onto the porch based on the reasonable suspicion that underage drinking was taking place. The officers thus had probable cause to believe that Brienza obstructed their investigation by refusing to cooperate after his lawful detention.

The officers had probable cause—and at least reasonable suspicion—to believe that an illegal party was taking place at the house, so they could lawfully detain Brienza when he stepped onto the porch. *See Lindsey*, 482 F.3d at 1290; *see also Knight v. Jacobson*, 300 F.3d 1272, 1277 (11th Cir. 2002) (explaining that the Fourth Amendment "does not prevent a law enforcement officer from telling a suspect to step outside his home and then arresting him without a warrant" because, "[i]n that situation, the officer never crosses the firm line at the entrance to the house" (quotation omitted)). The officers had the Facebook post, including the flyer bearing Walsh's name, and police "identified a recent . . . graduate of

the school with the last name Walsh." The flyer advertised a party that would last "ALL NIGHT LONG" at his home address. It declared that there would be free alcohol for ladies. And the flyer was distributed at a high school homecoming dance to an underage girl. Based on these objective facts, a reasonable officer "could conclude that there was a substantial chance of criminal activity," *Washington*, 25 F.4th at 902 (alteration adopted and quotation omitted), and could "have a reasonable, articulable suspicion" of such activity, *Lindsey*, 482 F.3d at 1290.

Brienza argues that reasonable suspicion "evaporated within minutes of their arrival" because the officers "observed absolutely no evidence of a party—no excessive amount of people, cars, golf carts, loud music, lights, cups, or beer bottles." But that argument is unpersuasive. The officers arrived about an hour after the flyer advertised that the "ALL NIGHT" party would begin, and a reasonable officer could think it unremarkable that most young people would arrive fashionably late. Consistent with the facts known to the officers, a small party could have been taking place inside. Likewise, a reasonable officer could find unremarkable the lack of cars an hour after the advertised start time. As the trial court in the criminal case explained, "[fourteen]-year-olds don't have cars." And it strains credulity to suppose that there was "no evidence" other than the flyer. As the officers approached the house, Officer Wadsworth reported that he "saw [people] in the house," a fact that supports the information on the flyer. So, based on a flyer that identified Walsh and the home address, the independent

corroboration that Walsh—a recent graduate—lived there, the fact that the flyer was distributed to minors, and the fact that people were present at the house, the officers could continue to reasonably believe that there was a substantial chance of criminal activity. *See Washington*, 25 F.4th at 902.

Nothing in the officers' conversation with Brienza and Walsh undermined their reasonable suspicion of underage drinking. Indeed, after Brienza and Walsh opened the door, the officers could hear other people inside. And Walsh later admitted that there were four people in the house, evidencing that at least a small gathering was taking place. To be sure, Walsh also asserted that "everyone[ wa]s over the age of [twenty-one]," and he denied making or distributing the flyer, but neither reasonable suspicion nor probable cause "require officers to rule out a suspect's innocent explanation for suspicious facts." *See Wesby*, 138 S. Ct. at 588. The officers were "not required to believe" Walsh's denials "or to weigh the evidence in such a way as to conclude that probable cause did not exist" because "police officer[s] need not resolve conflicting evidence in a manner favorable to the suspect." *Washington*, 25 F.4th at 902. The flyer that was distributed to minors at a high school and the presence of people inside the house furnished "plenty of reasons to doubt" Walsh's assurances. *Id.* (quotation omitted).

We conclude that probable cause and at least reasonable suspicion existed to detain Brienza on the porch to investigate underage drinking, barring a claim for false arrest under the Fourth Amendment. *See Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th

Cir. 2020) ("[T]he any-crime rule . . . insulates officers from false-arrest claims so long as probable cause existed to arrest the suspect for *some* crime, even if it was not the crime the officer thought or said had occurred."). And because Brienza's first premise—the "reasonable articulable suspicion the officers had regarding an alleged 'illegal party' at . . . Walsh's house evaporated within minutes of their arrival at the residence"—is wrong, his second premise—that, as a voluntary encounter, he "was not required to answer any questions, let alone produce identification"—is also wrong. Brienza does not contest that, if there was first reasonable suspicion to detain him, there was probable cause to arrest him for obstruction.

Indeed, the officers lawfully arrested Brienza for obstruction. Under Georgia law, "a person who knowingly and willfully obstructs or hinders any law enforcement officer . . . in the lawful discharge of his . . . official duties shall be guilty of a misdemeanor." GA. CODE ANN. § 16-10-24(a). "The essential elements of" the Georgia obstruction statute are: (1) "that the act constituting obstruction or hindering was knowing and willful"; and (2) "that the officer was lawfully discharging his official duties." *Taylor v. State*, 825 S.E.2d 552, 554 (Ga. Ct. App. 2019) (quotation omitted). A suspect can violate section 16-10-24(a) by refusing to identify himself and by refusing to surrender documents after he has been lawfully detained. *See Draper v. Reynolds*, 369 F.3d 1270, 1276–77 & n.10 (11th Cir. 2004); *Pinchon v. State*, 516 S.E.2d 537, 538 (Ga. Ct. App. 1999) ("Argument, flight, stubborn obstinance, and lying are all

examples of conduct that may satisfy the obstruction element."); *Bailey v. State*, 379 S.E.2d 816, 817 (Ga. Ct. App. 1989) ("The trial court was authorized to find that appellant's refusal to identify himself was not merely discourteous, it actually hindered and obstructed [the officer's] investigation . . . ."). And even if it is an open question whether the Constitution permits "punish[ing] [an individual] for refusing to identify himself in the context of a lawful investigatory stop," *Brown v. Texas*, 443 U.S. 47, 53 n.3 (1979), the officers need only establish that they had probable cause to believe that Brienza violated a "presumptively valid" statute, *see Michigan v. DeFillippo*, 443 U.S. 31, 34, 36–40 (1979) (holding that an "officer had probable cause to believe" that a suspect violated an ordinance that "declared it a misdemeanor for one stopped for 'investigation' to 'refuse to identify himself'" although a state court later declared the ordinance unconstitutionally vague because "[a] prudent officer . . . [is not] required to anticipate that a court would later hold the ordinance unconstitutional," because "[p]olice are charged to enforce laws until and unless they are declared unconstitutional").

The officers had probable cause to believe that Brienza committed a criminal offense in their presence, so they could have, "without violating the Fourth Amendment, arrest[ed]" Brienza. *Atwater*, 532 U.S. at 354. Brienza repeatedly refused to identify himself and confirm his date of birth. And Brienza orally objected when Corporal Williams asked Walsh if he could see the other people who were inside the house. Based on these facts, the officers "could conclude that there was a substantial chance," *Washington*,

25 F.4th at 902 (alteration accepted and quotation omitted), that Brienza's "[a]rgument," "stubborn obstinance," *Pinchon*, 516 S.E.2d at 538 (citation omitted), and "refusal to identify himself . . . actually hindered and obstructed [their] investigation," *Bailey*, 379 S.E.2d at 817 (citation omitted).  Brienza's Fourth Amendment false arrest claim must fail.  *Washington*, 25 F.4th at 903.

Fourth Amendment Malicious Prosecution Claim

"To establish a federal malicious prosecution claim under [section] 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable *seizures* in addition to the elements of the common law tort of malicious prosecution." *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003).  Malicious prosecution "requires a seizure pursuant to legal process."  *Williams*, 965 F.3d at 1158 (quotation omitted).

Here, there was no seizure "pursuant to legal process." *Id.* (quotation omitted); *see Kingsland v. City of Miami*, 382 F.3d 1220, 1235 (11th Cir. 2004), *abrogated on other grounds by Williams*, 965 F.3d at 1159.  "In the case of a warrantless arrest, the judicial proceeding does not begin until the party is arraigned or indicted." *Kingsland*, 382 F.3d at 1235.  Brienza's "arrest cannot serve as the predicate deprivation of liberty because it occurred prior to the time of arraignment, and was not one that arose from malicious prosecution as opposed to false arrest." *See id.* (quotation omitted).  And because "normal conditions of pretrial release" do not "constitute a continuing seizure barring some significant, ongoing deprivation of liberty, such as a restriction on the defendant's right

to travel interstate," *id.* at 1236 (quotation omitted), Brienza could not establish a Fourth Amendment malicious prosecution claim.

### First Amendment Retaliatory Arrest

The First Amendment protects an individual's right to speak and right not to speak. *Wooley v. Maynard,* 430 U.S. 705, 714 (1977) ("[T]he right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all."). To state a First Amendment retaliatory arrest claim under section 1983:

> a plaintiff generally must show: (1) [he] engaged in constitutionally protected speech, such as [his] right to petition the government for redress; (2) the defendant's retaliatory conduct adversely affected that protected speech and right to petition; and (3) a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech and right to petition.

*DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019).

The Supreme Court "has recognized that retaliatory animus by a governmental actor is a subjective condition that is 'easy to allege and hard to disprove.'" *Id.* (quoting *Nieves*, 139 S. Ct. at 1725). "For this reason, courts have identified two general approaches to retaliation claims against governmental actors, with the particular approach chosen dependent on the type of alleged retaliation at issue." *Id.* "One approach" is "typically used when a

governmental employee claims that he was fired because he engaged in First Amendment activity." *Id.* This isn't an employee-firing case, so the first approach doesn't apply here. "The second approach" is "taken when the governmental defendant has utilized the legal system to arrest or prosecute the plaintiff," as alleged here. *Id.*

For the second approach, we "require the plaintiff to plead and prove an absence of probable cause as to the challenged retaliatory arrest or prosecution in order to establish the causation link between the defendant's retaliatory animus and the plaintiff's injury." *Id.* "The presence of probable cause should generally defeat a First Amendment retaliatory arrest claim." *Nieves*, 139 S. Ct. at 1726.

But, in 2019, the Supreme Court in *Nieves* "explained that, although probable cause generally defeats a retaliatory arrest claim, 'a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so.'" *DeMartini*, 942 F.3d at 1296–97 (quoting *Nieves*, 139 S. Ct. at 1727). "In those types of cases, an unyielding requirement to show the absence of probable cause could pose a risk that some police officers may exploit the arrest power as a means of suppressing speech." *Id.* at 1297 (quotation omitted).

This "narrow exception to the no-probable-cause requirement . . . applies when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.*

(quotation omitted). "The Supreme Court stated that the plaintiff's showing of such objective evidence would address the causal concern that non-retaliatory reasons prompted the arrest and avoid a subjective inquiry into the officer's individual statements and motivations." *Id.*

> If the plaintiff makes this requisite objective evidence showing that others similarly situated were not arrested by the individual officer, the plaintiff's First Amendment retaliatory arrest claim may move forward in the same manner as claims where the plaintiff has met the threshold showing of the absence of probable cause.

*Id.* (quotation omitted).

But *Nieves*, and the exception to the absence-of-probable-cause requirement, were not clearly established until 2019. As the district court concluded, at the time of Brienza's arrest in 2015, there was no clearly established law creating an exception to the "no-probable-cause" requirement for First Amendment retaliatory arrest claims. Indeed, at the time of Brienza's arrest, the clearly established law was that a First Amendment retaliatory arrest claim was "defeated by the existence of probable cause." *Wood*, 323 F.3d at 883. Because, as we've already explained, the officers had probable cause to arrest Brienza for obstructing the investigation into underage drinking, the officers were entitled to qualified immunity on Brienza's First Amendment retaliatory arrest claim.

*State Law False Imprisonment Claim*

Brienza sued the officers and Peachtree City for false imprisonment under Georgia law. *See* GA. CODE ANN. §§ 51-7-20, 51-7-22. "The essential elements of false imprisonment in Georgia 'are an arrest or a detention and the unlawfulness thereof.'" *Hardigree v. Lofton*, 992 F.3d 1216, 1232 (11th Cir. 2021) (quoting *Kline v. KDB, Inc.*, 673 S.E.2d 516, 518 (Ga. Ct. App. 2009) (alterations adopted)). Under Georgia's false imprisonment statute, "[f]alse imprisonment is the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." GA. CODE ANN. § 51-7-20. "In the context of a warrantless arrest, probable cause and an exception to the warrant requirement (like the offense being committed in the officer's presence) are required for the arrest to be lawful." *Hardigree*, 992 F.3d at 1232 (citing GA. CODE ANN. § 17-4-20(a)(2)(A)).

Brienza's state law claim failed against the officers and Peachtree City because his arrest was not unlawful under Georgia law. To be sure, "[t]he existence of probable cause for an officer to make an arrest without a warrant is not a complete defense to a false imprisonment claim because, even if probable cause existed to believe a crime was committed, a warrantless arrest is still unlawful unless made pursuant to one of the exigent circumstances applicable to law enforcement officers" in Georgia Code section 17-4-20(a). *Kline*, 673 S.E.2d at 518. Under section 17-4-20(a), "a law enforcement officer is authorized to make an arrest for a criminal offense without a warrant . . . if the offense is committed in such

officer's presence or within such officer's immediate knowledge." *Id.* (quotation omitted).

Here, the officers had probable cause to arrest Brienza, and the arrest was "made pursuant to one of the exigent circumstances" in section 17-4-20(a). *Id.* The officers had probable cause under Georgia law because "the trial court's denial of [his] motion for a directed verdict of acquittal constitute[d] a binding determination of the existence of probable cause." *See Monroe v. Sigler*, 353 S.E.2d 23, 25 (Ga. 1987). And it is undisputed that Brienza's obstruction occurred in the officers' presence, satisfying one of the exigency requirements in section 17-4-20(a). Because Brienza's arrest was lawful, his state law false imprisonment claim must fail.[3]

## CONCLUSION

Because the officers had probable cause to arrest Brienza for obstructing the investigation into underage drinking, and because the officers did not violate any clearly established law, the district court did not err in granting summary judgment for the officers on Brienza's Fourth Amendment false arrest and malicious prosecution claims, and his First Amendment retaliatory arrest claim. And because the officers had probable cause and arrested Brienza under "exigent circumstances," *see Kline*, 673 S.E.2d at 518, the district court did not err in granting summary judgment for the officers

---

[3] Because Brienza did not show that he was falsely imprisoned under Georgia law, we don't need to decide whether the officers and Peachtree City had official and sovereign immunity under state law.

21-12290                Opinion of the Court                25

and Peachtree City on Brienza's state law claim for false imprisonment.

**AFFIRMED.**