[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12256
Non-Argument Calendar
_____

D.C. Docket No. 8:09-cv-01986-VMC-TBM

LEWIS MARTIN MOTON, JR.,

Plaintiff-Appellant,

versus

K. WALKER,
Sergeant, Hardee C.I.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(November 5, 2013)

Before CARNES, Chief Judge, and MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

Lewis M. Moton, proceeding pro se, appeals the district court's grant of summary judgment in favor of Sergeant K. Walker on Moton's 42 U.S.C. § 1983 claims.[1]  Walker was a correctional officer at the Florida facility where Moton was incarcerated.  Moton contends that Walker violated his rights under the Fourth and Eighth Amendments by conducting an unwarranted strip search of him and violated his rights under the First Amendment by retaliating against him for filing grievances.

As part of a routine cell inspection, Walker conducted a visual body cavity search of Moton that required him to remove his clothing.  Walker instructed him to bend at the waist, spread his buttocks, and cough, and he had to perform those actions three times.  Moton alleges that the search was unjustified because Walker never accused him of possessing contraband, and Walker had "a lewd, sadistic, malicious smile on his face" while conducting the search.  In addition to contending that the search violated his Fourth and Eighth Amendment rights, Moton contends that Walker conducted it to retaliate against Moton for filing grievances about prison conditions.  Walker wrote two disciplinary reports based

---

[1]  Although Moton also purported to appeal the district court's denial of his motion to alter or amend judgment under Fed. R. Civ. P. 59(e), he makes no argument on this point and so has abandoned it.  See Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008) ("While we read briefs filed by pro se litigants liberally, issues not briefed on appeal by a pro se litigant are deemed abandoned.") (citation omitted).  For the same reason, he has abandoned any argument that the district erred in finding that his claims for declaratory and injunctive relief were moot as a result of Walker's retirement and Moton's transfer to another prison.

2

on Moton's conduct during the search, and Moton alleges that those reports were false and that Walker wrote them to retaliate against Moton for filing grievances.

The district court concluded that Walker was entitled to summary judgment on all claims because Moton had failed to show any genuine issues of material fact and because Walker was entitled to qualified immunity on all of the claims. We review de novo a district court's grant of summary judgment, viewing all of the facts in the record in the light most favorable to the non-moving party. Brooks v. Cnty. Comm'n, 446 F.3d 1160, 1161–62 (11th Cir. 2006). We may affirm a district court's judgment on any ground supported by the record. Bircoll v. Miami-Dade Cnty., 480 F.3d 1072, 1088 n.21 (11th Cir. 2007).

## I.

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." Whittier v. Kobayashi, 581 F.3d 1304, 1307 (11th Cir. 2009) (quotation marks omitted). To receive qualified immunity, an official must first establish that he was engaged in a discretionary function when the allegedly wrongful acts occurred. Id. If the official was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity. Crosby v. Monroe Cnty., 394 F.3d 1328, 1332

3

(11th Cir. 2004).  In order carry that burden, "the plaintiff must show two things: (1) that the defendant has committed a constitutional violation and (2) that the constitutional right the defendant violated was 'clearly established' at the time he did it."  Id.

We use two methods to determine if a right is clearly established.  Fils v. City of Aventura, 647 F.3d 1272, 1291 (11th Cir. 2011).  The first one "looks at the relevant case law at the time of the violation" to determine whether "a concrete factual context exists so as to make it obvious to a reasonable government actor that his actions violate federal law."  Id. (alteration and quotation marks omitted).  The second method considers "the officer's conduct, and inquires whether that conduct lies so obviously at the very core of what the [constitution] prohibits that the unlawfulness of the conduct was readily apparent to [the officer], notwithstanding the lack of fact-specific case law."  Id. (quotation marks omitted).

## A.

Moton alleges that in conducting the search, Walker violated his Fourth Amendment rights because the search was unreasonable and his Eighth Amendment rights because the search constituted sexual abuse.[2]  "[P]risoners retain a constitutional right to bodily privacy."  Fortner v. Thomas, 983 F.2d 1024,

---

[2] Moton argued to the district court that the search also violated his Fourteenth Amendment rights, but because he did not make any argument about that on appeal, he has abandoned that claim.  See Timson, 518 F.3d at 874.

4

1030 (11th Cir. 1993). Even so, the Supreme Court and this Court have held that strip searches, including body cavity inspections, are not a violation of an inmate's Fourth Amendment rights when they are conducted after a contact visit or upon the inmate's entry to a facility as long as the searches are conducted in a reasonable and non-abusive manner. Bell v. Wolfish, 441 U.S. 520, 558, 99 S.Ct. 1861, 1184 (1979) (searching inmates after a contact visit); Powell v. Barrett, 541 F.3d 1298, 1314 (11th Cir. 2008) (en banc) (searching inmates upon entry).

Walker was acting within his discretionary authority as a corrections officer when he conducted the search. He stated in his affidavit—and Moton did not contradict him—that officers routinely conducted searches of inmates' cells and those searches sometimes included strip searches and visual body cavity inspections. Under Florida law, prison authorities may conduct strip searches, including a visual inspection of the inmate's rectum, when inmates arrive, after inmates have contact with the public, after inmates attempt an escape, and "at any time when they are suspected of carrying contraband." Fla. Admin. Code § 33-602.204(2)(b), (2)(e)(3).

In Powell we made it clear that "[t]he Bell decision means that the Fourth Amendment does not require reasonable suspicion for [body cavity inspection strip searches] in detention facilities." 541 F.3d at 1308. We concluded that some courts had misinterpreted Bell as "requiring, or at least permitting lower courts to

5

require, reasonable suspicion as a condition for detention facility strip searches, especially those that involve visual body cavity inspections." Id. at 1306.  We explained that a court must consider four factors in balancing the need for the search against the invasion of personal rights:  "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id. at 1305 (quotation marks omitted).  We then explained that the final two factors "merged into one heavy consideration" in the Bell case "because the searches took place in a detention facility, and the justification for them was the critically important security needs of the facility." Id. at 1306.

It is clear from our case law that a visual body cavity search of an inmate after he has had contact with the outside world is not a violation of the Fourth Amendment, even if the search is not justified by reasonable suspicion.  Moton, however, was searched not after contact with the outside world but as part of a routine search of his cell.  Our case law has not established that a visual body cavity inspection as part of a routine search is constitutional under the Fourth Amendment, but more importantly, our case law has not clearly established that such a search is unconstitutional.  Given our strong statement in Powell that a prison official does not need reasonable suspicion to conduct a visual body cavity inspection and the strong considerations given to the prison's need to maintain

6

security, we cannot say that a reasonable officer in Walker's position would have believed that he was violating Moton's Fourth Amendment rights merely by conducting the search.

Moton's only remaining ground for asserting a Fourth Amendment violation, then, is that the search was conducted in an unreasonable manner because Walker required Moton to expose his rectum three times. The search, which was conducted in Moton's cell while his cellmate waited outside, followed the procedure required by Florida law, including being conducted by an officer of the same sex and being conducted out of view of the inmate population. Fla. Admin. Code § 33-602.204(2)(e). It is not clearly established that requiring an inmate to bend over, spread his buttocks, and cough, and requiring him to complete those actions three times, is an unreasonable and abusive search. Cf. Evans v. Stephens, 407 F.3d 1272, 1281–82 (11th Cir. 2005) (holding that a strip search was unconstitutional because inmates were searched in an abnormal place, little privacy was observed, each inmate was penetrated by an object in front of the other, and the officers used threatening and racist language). Because Moton's clearly established rights under the Fourth Amendment were not violated, Walker is entitled to qualified immunity on Moton's Fourth Amendment claim.

B.

7

A prison official's sexual abuse of a prisoner may violate the Eighth Amendment because sexual abuse has "no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society." Boxer X v. Harris, 437 F.3d 1107, 1111 (11th Cir. 2006). To prove an Eighth Amendment violation based on sexual abuse, a prisoner must show that he suffered an injury that was objectively and sufficiently serious and that the prison official had a subjectively culpable state of mind. Id. In Boxer X, we concluded that "a female prison guard's solicitation of a male prisoner's manual masturbation, even under the threat of reprisal, does not present more than de minimis injury" and affirmed the dismissal of the Eighth Amendment claim. Id.

Even if Sergeant Walker lacked a legitimate penological purpose in conducting a strip search of Moton and his alleged smile revealed a "subjectively culpable state of mind," there was no evidence that Moton suffered any injury that was objectively more serious than the injury in Boxer X that we found to be de minimis. See Boxer X, 437 F.3d at 1111. Because there was no constitutional violation, Walker is entitled to qualified immunity on Moton's Eighth Amendment claim.

## II.

Under the First Amendment, a prison official may not retaliate against an inmate for exercising his free speech rights, including the right to complain about

8

the conditions of confinement and to file prison grievances.  Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003).  "An inmate may maintain a cause of action for retaliation under 42 U.S.C. § 1983 by showing that a prison official's actions were the result of the inmate's having filed a grievance concerning the conditions of his imprisonment."  O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011) (quotation marks and brackets omitted).  To establish causation, the plaintiff must show that the defendant was "subjectively motivated to discipline" the plaintiff for exercising his First Amendment rights.  Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008).  A prisoner who claims that the defendant's retaliatory conduct was writing false disciplinary reports cannot maintain that claim if, after he is given due process, he is "convicted" of the behavioral violation alleged in the reports and there is "evidence to sustain the conviction."  O'Bryant, 637 F.3d at 1215.

As a result of Moton's behavior during the search, Walker wrote two disciplinary reports, alleging that Moton failed to comply with orders and threatened Walker.  According to Walker, when he asked Moton to bend at the waist, Moton refused to comply, saying, "Fuck this shit.  I ain't doing it," and then told Walker, "I've got a natural life sentence.  I've got nothing but time.  I'll get you."  Moton, unsurprisingly, disputes this, but he was found guilty of the conduct at a disciplinary hearing based on the testimony presented by another officer and

9

an inmate, which corroborated much of Walker's statement.  Moton makes no argument that the disciplinary hearing did not afford him due process or that there was no evidence to support his conviction for the behavioral violation.  Therefore, Moton cannot maintain a claim that the disciplinary reports Walker wrote constituted retaliation.

Moton's retaliation claim based on the search itself also fails because he has not offered any evidence that his grievance filings caused Walker to conduct the search.  In his complaint and in his brief to this Court, Moton identified several officers who allegedly targeted him because he frequently files grievances, and he asserts that there was a "culture" in Florida Department of Corrections that frowned upon filing grievances.  None of those allegations, however, links Walker with the other officers who allegedly retaliated against Moton.  Apart from his own bare, conclusory allegations, Moton offers no evidence that Walker was part of a "conspiracy" to target him because of the grievances he had filed.[3]  See Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995) (affirming summary judgment against the inmate when he "produced nothing, beyond his own conclusory allegations," suggesting that the officer was motivated by retaliatory animus).

---

[3] Moton makes much of the fact that, after he had filed several grievances, he was limited to five per day.  But there is no evidence that Walker was involved in that decision or even that the policy was implemented as a punishment instead of as cost-saving measure, which is the reason the warden gave for it.

The only evidence that sheds light on Walker's motives does not lead to a reasonable inference that he chose to search Moton because of Moton's grievance filing. Moton alleges that Walker had a "lewd, sadistic, malicious" smile on his face during the search. He also alleges[4] that Walker was not assigned to his dorm on the day of the search and did not log in as required when he entered Moton's dorm. It is also true that Walker has not offered any evidence that he believed Moton possessed contraband other than his vague statement in his affidavit that "it was determined that a strip search of [Moton and his cellmate] was necessary." Even if we assume that Walker acted without reasonable suspicion and was targeting Moton (an assumption undermined by the fact that Walker conducted a strip search of Moton's roommate as well), Moton has not asserted any facts showing that Walker wanted to target him because he had filed a lot of grievances. The district court did not err in granting summary judgment in favor of Walker on Moton's First Amendment retaliation claims.

---

[4] Moton submitted a motion for discovery of Walker's duty assignment the day of the search, but the district court did not rule on it. Moton argues that the district court abused its discretion in not granting that motion. Because we conclude that Walker is entitled to summary judgment even assuming the truth of Moton's allegation that Walker was not assigned to Moton's dorm that day, his discovery request, if granted, would not have enabled him to show a genuine issue of material fact. Therefore, the district court did not abuse its discretion in granting summary judgment before ruling on Moton's discovery motion. See Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

**AFFIRMED.**[5]

---

[5] Moton's motion for leave to file a reply brief out of time is GRANTED, and that brief was considered in reaching this decision.